### AUTHORS & NEWSPAPERS ASS'N v. O'GORMAN CO.

(Circuit Court, D. Rhode Island. July 23, 1906.)

No. 2,700.

**1. COPYRIGHT—BOOKS—RESTRICTED PUBLICATION—NOTICE.**
Where the owner and publisher of a copyrighted book sold copies thereof containing a notice restricting the purchaser's title, and requiring that the same should not be sold prior to August 1, 1907, such notice did not, without communication to the purchaser, become a part of the contract of sale so as to bind the purchaser with its provisions.

**2. PRINCIPAL AND AGENT—SECRET INSTRUCTIONS—SALES AGENT.**
Where the owner of a copyrighted book placed copies thereof in the hands of an agent for sale, he thereby clothed the agent with apparent authority to give complete title to the copies sold, so that buyers were not bound by secret instructions to such agent, restricting the title he was authorized to pass, which were uncommunicated.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Agent, §§ 377, 377½.]

**3. CONTRACTS—RESTRAINT ON ALIENATION—PUBLIC POLICY.**
A provision in a contract for the sale of a copyrighted book that it should not be resold prior to August 1, 1907, or offered or advertised for resale, was not contrary to public policy.

**4. INJUNCTION—PRELIMINARY INJUNCTION—ISSUANCE.**
Complainant issued and sold a copyrighted book only through authorized agents, who were permitted to sell only at retail at 50 cents per copy on the express condition that the books should not be resold prior

to August 1, 1907, etc. Each of the books also contained a "notice to purchaser" reciting such restrictions. Defendant, with knowledge of complainant's plan of sale and the restrictions placed thereon, instigated the purchase of 55 copies of the book, which it proceeded to sell in violation of the restrictions, at a probable loss, for 49 cents. *Held*, that complainant was entitled to a preliminary injunction restraining such sale pendente lite.

In Equity. Complainant's petition for a preliminary injunction.

Elder & Whitman, for complainant.

Barney & Lee, Walter H. Barney, and F. I. McCanna, for defendant.

BROWN, District Judge. This is a petition for a preliminary injunction to restrain the defendant from selling copies of a copyrighted book entitled "A Rock in the Baltic," not purchased directly from the complainant, and "from purchasing or otherwise obtaining for the purpose of resale copies of said book from any person, firm or corporation having a contract with" the complainant "for the exclusive sale of said book, or from in any manner interfering with" the complainant's "rights under said copyright, or with its plan of sale and distribution of said work."

The general character of the right asserted by the complainant is shown by the following notice upon the inner side of the cover of the book:

### "Notice to Purchaser.

"This copyright volume is offered for sale to the public only through the authorized agents of the publishers, who are permitted to sell it only at retail and at fifty cents per copy, and, with the express condition and reservation that it shall not, prior to August 1, 1907, be resold, or offered or advertised for resale. The purchaser from them agrees to this condition and reservation by the acceptance of this copy. In case of any breach thereof, the title to this book immediately reverts to the publishers. Any defacement, alteration or removal of this notice will be prosecuted by the publishers to the full extent of the law.    The Authors Newspapers Association."

The complainant contends that, by reason of this notice on the cover of each of its copyrighted volumes, and by reason of the limited authority of its agents through whom the same were disposed of to the public, it has parted with only a portion of the monopoly which is given by the copyright statutes; and, further, that no purchaser of a copy of these books acquired any right to resell it before August 1, 1907. The main points made by the complainant are: (a) That the purchaser of one of these volumes acquired only a limited title, a title which he himself could not reconvey before the date mentioned in the notice; (b) that the defendant had full notice of the reservation by the complainant, and of the agents' restricted right to sell; (c) that the defendant is encouraging, soliciting, and procuring a breach of contract with the complainant.

Upon the hearing of this petition, my first impression was that the fact that the book in question is copyrighted was immaterial.

The bill alleges that the complainant has "entered into contracts with a person, firm or corporation in each of many cities of the

United States, whereby it appointed said person, firm or corporation its exclusive agent for the sale of said book in said city and has bound its said agents to sell said books at the uniform price of 50 cents per copy, and not knowingly to sell or advertise or offer for sale to any other dealer or for resale prior to August 1, 1907, and to sell each copy upon the express condition that it should not be sold or offered for resale by the purchaser before said date."

The bill sets forth diversity of citizenship between the complainant and the defendant, and:

"That the value of its said plan of selling said books and its contracts with said exclusive agents, and the injury and damage inflicted on your orator by the acts of the respondent, exceed in value the sum of five thousand dollars, exclusive of interest and costs."

The complainant therefore does not base the claim of federal jurisdiction solely upon its ownership of the copyright. The case, in substance, amounts to this: That the complainant desires to maintain a retail price of 50 cents upon its books; to do this, it appoints exclusive agents in different cities, who agree to maintain this price; that the title to books received by said agents is subject to the express condition and reservation, and to sell each copy under said condition and reservation. If the complainant's case rested entirely upon its copyright, or if the case were presented simply as a bill for the infringement of a copyright, the complainant's rights would be so doubtful, as a matter of law, that a preliminary injunction would not be justified.

In Bobbs-Merrill Co. v. Straus (C. C.) 139 Fed. 155, 181, it was said:

"It is a close question whether a copyright may be infringed by selling in violation of express and explicit restrictions placed on the dealer, expressly made an agent or licensee only, as to the mode of sale or the price at which same is to be sold."

Upon appeal, in a careful and learned opinion by Judge Townsend dated June 16, 1906 (147 Fed. 15), the Circuit Court of Appeals for the Second Circuit said:

"The complainant herein is attempting by a mere notice to import into the statutory copyright a right of limited publication or of restriction upon use, which was abandoned by virtue of the surrender of the common-law copyright.

"Counsel for complainant argues as follows:

"'To justify their sale by the proprietor's publication of the books, defendants must show an unqualified and absolute publication. But there was no unqualified publication, offer or distribution of The Castaway. It was offered and published subject to the restrictions and limitations expressed in the notice.'

"We cannot assent to the latter assertion. We think, in view of the foregoing considerations, that there was an unqualified and absolute publication and a surrender of the right of restricted publication when the owner of the book complied with the statutory requirements and thus acquired the right to the multiplication of copies. * * *

"The fallacy of complainant's argument lies in disregarding the peculiar common-law right of literary property, namely, the right to restricted publication, and the conditions precedent to the enjoyment of the statutory right, namely, the surrender of such common-law right by a general publication. If the statutory owner desires after publication to control the lawfully pub-

lished copies, such control can only be secured by means of positive contract or conditions, so accepted by the party to be charged or so brought to his knowledge that it would be inequitable to permit him to violate them. But while this right might be protected at law or enforced by a court of equity, it is not a statutory right, but a common-law right attached generally to the ownership of all species of property. Keeler v. Standard Folding Bed Co., 157 U. S. 659, 15 Sup. Ct. 738, 39 L. Ed. 848. * * *

"A court of equity therefore would not be justified in enforcing the provisions of the copyright law, merely to prevent a sale of a copyrighted article, because the vendor has informed the purchasing public that it will treat such sale as an infringement."

In view of this decision, I am of the opinion that, upon this petition for a preliminary injunction, this case must be treated independently of the copyright law, and merely as a case involving ordinary principles of contract. The complainant, being the owner of books, offers these books, through its agents, for sale to the general public, requiring its agents to agree that they will make only conditional sales. If an agent sells a book to a purchaser unconditionally, he violates his agreement. The notice contained in the book does not, without communication to the purchaser, become a part of the contract between the agent and purchaser. It is a mere notice, and such a notice does not become incorporated in the contract unless its terms are distinctly declared and deliberately accepted by the purchaser. The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039. It is very clear that the purchaser from an agent, without knowledge of the condition, does not agree to it merely by the acceptance of a copy. If an agent offers the book over the counter for 50 cents, and a purchaser pays 50 cents for it, the latter thereby acquires a complete title free from any condition and restriction; and affirmative proof of communication, additional to that afforded by the mere fact that a notice is in the book, is essential in order to show that the purchaser agreed not to resell the book, or acquired merely a restricted title.

To meet this point, it is urged that, if the purchaser expects to buy the absolute title while the vendor has no intention of parting with the absolute title and relies upon the notice to inform the purchaser of the limitation, there is no meeting of minds, and therefore there is no sale; and that therefore, if the notice be subsequently called to the attention of the purchaser, and he then learns that his mind and that of the vendor have never met, it is his duty either to assent to the provisions and retain the book, or to return the book to the vendor. This is both impractical and unsound. Secret instructions to the agent are not binding upon the purchaser. By putting the books into the hands of an agent for sale, the owner clothes the agent with apparent authority to give a complete title.

A merchant who puts books upon the counter with the price marked thereon, and puts a salesman behind the counter, clothes that salesman with apparent authority to sell for the price named, and upon paying such price the purchaser acquires full and absolute title. In appointing the various firms or corporations agents for the sale of the books, the complainant clothes them with an apparent authority as agents, and, if it intends to clothe them with less than ordinary authority, it is under the express obligation of bringing the restriction of authority

to the purchaser's attention in such positive manner as to overcome the strong presumption of authority arising from the usual course of business. The purchaser, having acquired a complete title, has full right to convey a complete title. The mere fact that a second purchaser from the original purchaser had knowledge that the original vendor did not intend to have his agent pass a full title would be of no consequence. The second purchaser, knowng that a full title had been passed, would violate no rights of the original vendor in acquiring that full title for himself.

It is contended by the defendant that, even if the purchaser's attention is called to the notice in the book, and he is informed that the agent has but a limited authority, the purchaser nevertheless acquires a full and unrestricted title, and full right of transfer of such title. It is said that this restraint on alienation is contrary to public policy. I am unable to see any inequity or violation of public policy in the agreement by the purchaser of a chattel that he will not resell it within a reasonable period. The purchaser gets all that was offered him, and all that he paid for, and the vendor maintains the market price by an agreement that the purchaser will not compete with him by selling the book within a limited period. To consider this as an unlawful agreement in restraint of trade would be straining the matter. The case resolves itself, then, into the question of whether it is sufficiently proved that the defendant has violated any rights of the complainant.

I am of the opinion that, while it is possible that the defendant may have acquired a good and transferable title to some of the books which it has disposed of, it is highly improbable that this is the case with so many as 55 copies. It is sufficiently proved that the defendant, having knowledge of the complainant's plan of sale and of the restrictions placed upon its agents, has instigated the purchase of at least 55 copies in New York. Whether the defendant's agents, or persons induced by them to become purchasers, were expressly informed of the notice becomes immaterial; for, if the defendant had actual knowledge of the limited authority of complainant's agents, such knowledge must be attributed to defendant's agents, and to persons instigated by such agents to make the purchases.

I am of the opinion that the defendant, being apprised of the agent's limited authority, could not, by procuring or inducing the agent to break his agreement with complainant, secure a better title than the agent was actually authorized to convey. While the ordinary purchaser of a book over the counter is not bound to anticipate or look for a restriction or notice of this kind, and while it seems to me rather more probable that he would not himself discover a notice of this character than that he would, yet, if before purchasing he has knowledge of the restriction, I fail at present to see why it is not binding upon him. While I should give little assistance to an attempt to incorporate in a contract of sale terms of which the purchaser was ignorant, and while the mere fact that a book contains a printed notice of this kind seems to me altogether insufficient evidence that the purchaser knew of it or assented to it, yet I am of the opinion that a contract between vendor and vendee that the vendee will not within a year resell is not unreasonable

nor against public policy as applied to books of this character, and, if actually made, is entitled to protection.

Upon the question of granting a preliminary injunction, a further fact is of some importance. The books were sold by the defendant for 49 cents. They doubtless cost 50 cents, and therefore were not sold as a matter of ordinary business, for the sake of making a profit, but were sold at a loss for the sake of competing with the complainant. The defendant will suffer no substantial harm from being restrained from selling these books at a pecuniary loss; and to deprive it of such trade advantage as may result from breaking the price on the books, and thereby advertising the defendant's store, does not, under the circumstances, seem a hardship to the defendant which should deprive the complainant of temporary relief.

As to the terms of the injunction: It is possible that the defendant may have acquired a transferable title to some of these books, but, as it appears that the defendant, with knowledge, has instigated the purchase of or purchased a large number of books to which it can have only the limited title of one who purchased with notice, I think the case must be treated in a practical way, and that the complainant is entitled to an injunction in general terms, but subject to the right of the defendant to apply to the court for a modification as to such books as it may be able to show were procured from persons who were not directly or indirectly instigated by the defendant to purchase them, and who purchased them without knowledge of a restriction of the right to resell. In Social Register Ass'n v. Murphy (C. C.) 128 Fed. 116, the injunction was made general, with liberty to the defendant to apply for a modification; and I think a similar course is proper in this case. The decree should cover both sales and interference with the complainant's contracts with its authorized agents.

The complainant is entitled to a preliminary injunction, and a draft decree may be presented accordingly.