## Staunton.

### B. F. THOMPSON, EX'R, ET ALS., V. N. D. ARTRIP, ET ALS.

September 22, 1921.

Absent, Burks, J.

1. APPEAL AND ERROR—*Objection for the First Time on Appeal— Sufficiency of Notice to Quit.*—Where a party fails to object below to a proceeding, he is presumed on appeal to waive contention as to its validity. Thus, in an action of unlawful detainer, where no objection to the sufficiency of a notice to quit was made below by appellees, they will not be permitted to urge this objection for the first time on appeal.

2. LANDLORD AND TENANT—*Tenancy From Month to Month— Definite Lease Followed by an Agreement to Give Lessees a Month or Two to Close Out Business.*—A landlord by parol lease leased his premises to tenants for two years. Just before the termination of this lease the landlord by a supplementary agreement gave the tenants a month or two in which to close out their business. At the expiration of the lease the tenants continued in possession, paying monthly rent.

   *Held:* That after the expiration of the lease the tenants held as tenants from month to month.

3. LANDLORD AND TENANT—*Tenancy From Year to Year.*—Where an original lease was for two years, and the tenants held over without any new contract, paying rent as formerly, the nature of the subsequent holding would be a tenancy from year to year.

4. CONTRACTS—*Offer—Acceptance.*—It is not necessary, in order to make a contract, that a proffer submitted by one party should be formally and in terms accepted by the other. Acceptance may be inferred from the acts and conduct of the promisee.

5. LANDLORD AND TENANT—*Tenancy From Year to Year—Tenancy, from Month to Month.*—The presumption that a tenant for years who holds over after the expiration of his term, with the permission of the landlord, is a tenant from year to year, may always be repelled by evidence showing that such holding over is in another character, or for some other purpose than that of tenant from year to year.

6. NEW TRIALS—*Verdict Against the Evidence or Without Evidence to Support It—General Rule.*—The verdict of a jury, particularly upon conflicting evidence, is always entitled to great respect, and should not be set aside, unless it is plainly against the evidence, or without evidence to support it.

7. PARTNERSHIP—*Denial of Existence of Partnership—Affidavit.*— In an action of unlawful detainer, defendants denied that a partnership existed between them, and claimed that none was alleged or proved. The summons was against defendants, naming them, trading as the Lewis Creek Mercantile Company, and the notice to terminate the lease was against the same concern. The defendants appeared, pleaded not guilty, and issue was joined. There was no affidavit denying partnership under section 6127, Code of 1919.

*Held:* That all conflicts between the testimony of plaintiffs and defendants were settled by the verdict of the jury in favor of plaintiffs.

8. LANDLORD AND TENANT—*Notice to Quit—Acceptance of Rent.*— Collection of rent to the time at which a lease was terminated by notice to quit involved no waiver of rights under the notice.

Error to a judgment of the Circuit Court of Russell county in an action of unlawful detainer. Judgment for defendants. Plaintiffs assign error.

*Reversed.*

The opinion states the case.

*A. T. Griffith,* for the plaintiffs in error.

*Bird & Lively* and *G. B. Johnson,* for the defendants in error.

SAUNDERS, J., delivered the opinion of the court.

This is an action of unlawful entry and detainer by B. F. Thompson, executor, and others, to recover from N. D. and Fleet Artrip, doing business under the firm name and style of Lewis Creek Mercantile Company, a certain storehouse and lot in Russell county, Va.

It appears from the record that the plaintiffs secured a

verdict against the defendants in the above action. Thereupon, a motion was made to set aside the verdict on the ground that it was contrary to the law and the evidence. The trial court sustained this motion, and awarded a new trial. To this action of the court the plaintiffs excepted. At the next calling of the case, the plaintiffs, failing to introduce any evidence, the court entered a final order dismissing the case from the docket. To this judgment of the court a writ of error and supersedeas were awarded by one of the judges of this court.

The property leased to the defendants was the property of the plaintiffs. They were represented in the transaction by B. F. Thompson, and no question is raised as to his authority. The lease was a verbal one, and according to the testimony of Thompson was for two years, beginning March 20, 1918, and ending March 20, 1920. The Artrips took possession of the property, paying nine dollars per month rent therefor. The defense sets up a different contract of leasing, alleging further that the property was rented to N. D. Artrip alone. The monthly rent was collected first by Thompson, and later by C. W. Fuller. B. F. Thompson states that some time in March, 1920, prior to the expiration of the two years' lease, Fleet Artrip, who is described by the witness as "the man in actual charge of business at the store,". advised him (Thompson) that "they were not going to buy any more goods, and were going to close out and give the property up. Later, just about the time the lease expired, Fleet Artrip told Thompson that if they would "give them a month or two they would close out their goods, and get off the creek." Further, that "he tried to sell the goods back to him," i. e., Thompson.

Proceeding with his testimony, Thompson says: "They paid us the nine dollars a month right on up to July 3, 1920, when we had prepared the notice to them to vacate the property. The possession has been withheld from us

since September 1, 1920, and since the end of the contract until now, no other contract was ever made with them, they have continued to hold since the end of their contract. The rent has been paid up to that date, September 1, 1920, and up to July 3, since the end of the contract."

[1] On July 26, 1920, the lessors gave notice to the Lewis Creek Mercantile Company as follows: "You, and each of you, are hereby notified that the undersigned intend to terminate the lease of that certain store building, etc. * * * and which said property you hold as tenant by the month; and that the said termination shall become effective after the expiration of thirty days from the service of this notice as provided by law." This notice was served on the same day on Fleet Artrip, the return stating that he was in possession of the premises. The sufficiency of this notice is objected to in this court by the appellees, but it does not appear from the record, or from the opinion of the learned judge of the trial court which is before us, that a like objection was made at the trial. This notice is not in the usual form, but we are not prepared to say, though we do not so decide, that it is not substantially sufficient. The summons in unlawful detainer was not issued until September 10, 1920. On September 18, the defendant appeared and pleaded not guilty. The case appears to have been tried upon the merits. Jackson, a constable for the New Garden magisterial district, proved without objection, the notice to terminate the lease, and service thereof on July 6, 1920. Conceding that this notice was defective, objections to same should have been made in the trial court. Not having done this, appellees will not be permitted to urge this objection for the first time in this court.

The case of *Shenandoah Valley R. Co.* v. *Miller*, 80 Va. 821, is one in which a subcontractor sought to give notice, and perfect a mechanic's lien pursuant to the statute. His notice did not conform to the statute, and was not served

as required by law, but objection on the ground of these defects was not made at the proper time. This court, passing on the effort to make these objections in the appellate court, said:

"Neither was made in the court below; but both are for the first time raised in the appellate court. If the company desired to rely upon them, it should have brought them to the attention of the circuit court; and, not having done so, clearly it is now too late to raise them here. The object of the notice is to apprise the owner of the subcontractor's claim, and to warn him against making payment to the general contractor. And if the notice be, for any reason, defective, or if it be not perfectly served, it is the undoubted privilege of the owner in a suit or action against him by the contractor to defend on that ground. But these defects, or objections, he may waive as in the present case was done by the defendants in not objecting in the circuit court to the introduction in evidence before the jury of a copy of the written notice served by the plaintiff, with the return thereon; and having thus waived them there, the right to insist upon them now is gone." 80 Va., p. 826. See also cases cited.

"It is a further principle of appellate procedure that an error to be available on appeal must have occurred without the express or implied consent of the appellant. A party is held on appeal to the position which he assumed below, and is accordingly estopped to allege error in any action of the trial court which he has recognized as valid by his voluntary acts. Accordingly, when the act assigned as error was done by agreement of the parties, it cannot be availed of on appeal to reverse the judgment, although it is erroneous; so where a party fails to object below to a proceeding, he is presumed on appeal to waive contention as to its validity." 2 Ency. Pl. & Pr., p. 516.

[2, 3] The real question for determination in this case is

the precise nature of the contracts between the parties. The plaintiff set up a definite parol lease to expire on March 20, 1920, followed by a supplementary agreement to give the defendants a month or two in which to close out their business. If this latter contract was made, and at its expiration the defendants continued in possession, paying monthly rent, they would be tenants from month to month. The plaintiffs proceeded in their action upon that theory. The balance of March, and the months of April and May would certainly be a month or two. Thereafter, if rent was paid and received, the tenancy would be from month to month. The defendants deny both the alleged parol lease for two years and the supplementary lease for a month or two, and set up an entirely different contract. This contention presented a question of fact which the jury decided adversely to the defendants. If credence had been given to the defendants' version of the contract, the verdict would have been in their favor. That the parties realized that an issue of veracity was presented over the conflicting contentions of the parties, and that it was considered that the case would turn upon the resolution of that conflict, is shown by the fact that after the parties, plaintiff and defendant, had testified, witnesses were introduced to establish the general reputation for veracity of both the Artrips and B. F. Thompson.

The jury having found a verdict for the plaintiffs, that verdict should have been followed by judgment, unless it was contrary to the evidence, or without evidence to support it.

It appears from the opinion of the trial court that it concluded that the "proof showed that the defendants paid rent for, and held possession of, the premises after the two years had expired," and that "no new conditions have arisen since the original lease, in the case at bar, but the same parties have the title, and the defendants hold the

same premises for which they have paid the same rent up to a date after the notice was served in the case. The original lease, by the contention of the plaintiffs, was for two years." Concluding, the court said: "To hold that a tenancy from month to month existed in this case, would be plainly against the undisputed contract between the parties, and, therefore, the notice given in the case was not sufficient." Of course, if the original lease was for two years, and the defendants held over without any new contract, paying rent as formerly, the nature of the subsequent holding would be a tenancy from year to year. But such a view of the evidence ignores the statements to Thompson by Fleet Artrip, immediately prior to the termination of the two year lease in March, 1920, and the action of the parties thereon.

The first statement of Fleet Artrip, the active manager in charge of the business, was that "they were not going to buy any more goods, and were going to close out, and give the property up." This certainly indicated a purpose on the part of the defendants to surrender the premises at the expiration of the lease. A little later and just about the time the two years expired, the same Artrip said to Thompson, that if "we (i. e. the lessors) would give them a month or two, they would close out their goods, and get off the creek, and he tried to sell the goods back to me." Thompson does not state in terms that he accepted this proposition, but the Artrips continued in possession after this offer on their part, they paying and the plaintiffs receiving nine dollars a **month rent.**

If it is considered upon this state of facts that a new contract was made, then a "new condition" arose after the original lease, and the rights of the parties thereafter would be determined with reference to the new contract, and not with reference to the original parol lease for two years.

Apparently the monthly rent was treated as due at the

23

end of each calendar month, the lessors collecting and the lessees paying on that basis.    Both the witnesses for the plaintiffs and the defendants state that the rent was paid up to September 1, 1920.   N. D. Artrip states that he "paid the rent on the property down to September 1, 1920, and that he has paid the rent on the property in the same way, and in the same amount, ever since he went into possession of the property, down to September 1, 1920."   The notice terminating the contract was evidently given with reference to September 1st, for Thompson states that the "possession was withheld from them since September 1, 1920." This notice would not have been sufficient, if the defendants had held over under the original two year lease, paying the agreed rental, for the tenancy in such case would be from year to year.   But if the jury was justified in concluding that the request of the defendants, submitted by Fleet Artrip to the plaintiffs, and the subsequent action thereon of the parties, constituted a new contract of lease, then this notice would be sufficient.   The holding over, in that event, and payment of monthly rent, would create a tenancy from month to month.

"At any time before the expiration of a lease, the parties may agree as to what shall be the nature of the tenants' holding over."  *Blumerburg* v. *Myres,* 32 Cal. 93, 91 Am. Dec. 560.

[4] Furthermore, it is not necessary, in order to make a contract, that a proffer submitted by one party shall be formally and in terms accepted by the other.   Certainly all that passed between the parties prior to the expiration of the lease, as well as their subsequent action thereon, was matter proper for the consideration of the jury for the purpose of ascertaining the nature of the subsequent holding.

"An acceptance of an offer may be by act, as where an offer is made that the offerer will pay, or do something else, if the offeree should do a particular thing.   In such a

case performance is the only thing needful to complete the agreement, and create a binding promise." 13 Corpus Juris, 275, sec. 73, and cases cited.

Acceptance may be inferred from the acts and conduct of the promisee. *Colgin* v. *Henley,* 6 Leigh (33 Va.) 85-6, 104-5.

It was competent for the jury, under their well recognized powers, to pass on and determine the credibility of the witnesses, and to conclude from the evidence of Thompson and the action of the parties that prior to March 20, 1920, the Artrips did submit a proposition which was acceded to by the plaintiffs, and which determined the character of the future holding of the premises in question.

[5] The presumption that a tenant for years who holds over after the expiration of his term, with the permission of the landlord, is a tenant from year to year, may always be repelled by evidence showing that such holding over is in another character, or for some other purpose than that of tenant from year to year.

In the instant case this presumption is repelled by evidence of a new contract, to which credence was given by the jury, as shown by their verdict for the plaintiffs.

[6] It was manifest error to set aside this verdict in view of the evidence tending to establish a supplementary agreement between the parties, thereby introducing a new condition, and repelling the implication that would have followed from a mere holding over by the lessees, and payment of monthly rent at the expiration of the two-year lease. The verdict of the jury, particularly upon conflicting evidence, is always entitled to great respect, and should not be set aside, unless as stated *supra,* it is plainly against the evidence, or without evidence to support it.

[7] The defense contends that there was no partnership between the Artrips, that none was alleged and none proved. The summons in unlawful detainer is against N. D. and Fleet

Artrip, trading as the Lewis Creek Mercantile Company, and the notice to terminate the lease is against the same concern. After these notices were given, the defendants appeared, pleaded not guilty, and issue was joined. There was no affidavit denying partnership under section 6127, Code of Virginia. All conflicts between the testimony of the plaintiffs and defendants were settled by the verdict of the jury.

[8] A further contention of the defendants is that by receiving rent to September 1, 1920, the plaintiffs waived the effect of their notice to terminate the lease. The notice to terminate the lease related to the month ending August 31, 1920. It could not relate to the month ending July 31, for the manifest reason that it was given and served during that month. The Code provides that a tenancy from month to month may be terminated by a thirty days' notice in writing prior to the end of the month. The month in this case was August, 1920, and the plaintiffs were entitled to collect their rent to the time at which the lease was terminated. Hence, collection to that date involved no waiver of rights.

For the reasons heretofore stated, the judgment complained of will be reversed, and a judgment will be entered, conforming to the verdict of the jury, and awarding the possession of the premises in controversy to the plaintiffs.

*Reversed.*