# Richmond.

## Green's Executors v. Howard M. Smith.

February 25, 1926.

Absent, Christian, J.

1. Automobiles—*Liability of Garage Keeper—Keeper Agreeing to Call for and Deliver Car Once a Day—Liability for Negligence of Garage Keeper's Employee Delivering or Calling for Car—Case at Bar.*—The instant case was an action by garage keeper to recover over from the owner of a car damages he had been compelled to pay a third party in compensation for injuries inflicted by plaintiff's employee while driving to the garage, under agreement between plaintiff and the owner of the car, that plaintiff would deliver the car at the owner's residence and take it back to the garage once each day, with the further understanding that plaintiff should not be responsible for any damage which might occur to the car while in the hands of his employees during such movements. Plaintiff alone had the right to select and engage the employees of his garage, the power to discharge and control them, and was alone responsible for the payment of their wages. The employees were under these circumstances plaintiff's servants.

   *Held:* That defendant, in the absence of agreement, was in no sense liable to the plaintiff for injuries inflicted upon the third party through the negligence of plaintiff's employee while returning the car to plaintiff's garage.

2. Automobiles—*Bailments—Liability of Owner for Negligence of Bailee.*— The owner of an automobile is not liable for the negligence of a bailee of the property over which the owner is exercising no control at the time of the injury, and such negligence cannot be imputed to the bailor.

3. Contracts—*Mutual Assent—Acceptance and Proposal.*—It is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts, and, in order that this mutuality may exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct which evince the intention of the parties to contract; and that their minds have met may be shown by direct evidence of an

actual agreement, or by indirect evidence of facts from which an agreement may be implied.

4. CONTRACTS—*Offer—Communication of Offer.*—Before one can be held to have accepted the offer of another, whether such offer is made by word or act, there must have been some form of communication of the offer; otherwise there could be no assent and, in consequence, no contract.

5. CONTRACTS—*Offer and Acceptance—Acceptance of Papers Containing Terms.*—A contract may be formed by accepting a paper containing terms. If an offer is made by delivering to another a paper containing the terms of a proposed contract and the paper is accepted, the acceptor is bound by its terms; and this is true whether he reads the paper or not. He is bound by all the conditions whether he reads them or not, if he knows that the document contains conditions. But he is not bound by conditions of which he is ignorant, even though the ticket or document contains writing, unless he knows that the writing contains terms, or unless he ought to know that it contains terms, by reason of previous dealings, or by reason of the form, size, or character of the document.

6. AUTOMOBILES—*Liability of Garage Keeper—Agreement by Garage Keeper to Deliver a Car at the Residence of the Owner and Return the Same to the Garage Daily—Folder Sent by Garage Keeper to His Patrons Denying Responsibility for Negligence of Employees while Delivering or Returning Car—Case at Bar.*—In an action by a garage keeper to recover over from the owner of a car damages that garage keeper had been compelled to pay a third party for injury inflicted through the negligence of an employee of the garage keeper, while returning the car to the garage, plaintiff relied upon a folder sent with the monthly accounts to its patrons. The folder contained a provision that the owner of the car agreed to accept the employee of the garage keeper as his or her agent when delivering and calling for the car once each way daily and to absolve the garage keeper from any liability while the car was in the hands of the employee. There was nothing on the face of the folder to indicate that it contained the terms of a contract between the car owner and the garage keeper. The paper only purported to contain a schedule of rates. There was no evidence that the owner of the car or her agent ever read the folder.

*Held:* That as the evidence failed to show that defendant had notice of the condition by which the garage keeper was released from responsibility from the negligence of his employee, plaintiff was not entitled to recover over from defendant.

7. CONTRACTS—*Mutual Assent—Offeree not Bound by Unknown Terms of a Document by His Acceptance Thereof.*—An offeree is not bound by the unknown terms of a document by his acceptance of the same without objection, when the document delivered to him purports

to be, and would by a reasonable man be understood to be, merely a check, schedule of rates or voucher, and not a contract, as in the case of a baggage receipt or check, an ordinary railroad ticket, and other receipts or papers of a similar character.

## ON PETITION FOR REHEARING.

8. JUDGMENTS AND DECREES—*Death of Defendant—Code of 1919, Section 6164.*—Under section 6164 of the Code of 1919, judgment may be rendered against a defendant dying after verdict and before judgment without having the action revived.

9. ABATEMENT, REVIVAL AND SURVIVAL—*Appeal and Error—Executor as Proper Party to Apply for a Writ of Error.*—Where the death of the party defendant was suggested and the proceedings revived against her executors, the executor is then the proper party to apply for a writ of error.

Error to a judgment of the Hustings Court, Part 2, of the city of Richmond, in a proceeding by motion for a judgment for money. Judgment for plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Robert L. Nase,* for the plaintiffs in error.

*Scott & Buchanan,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

The defendant in error, Howard M. Smith (hereinafter designated as plaintiff) sued Mrs. A. D. Green (hereinafter designated as defendant) to recover over damages he had been compelled to pay one John T. Moore in compensation for injuries inflicted on said Moore by plaintiff's employee while driving defendant's automobile through the streets of the city of Richmond. Upon the trial of the case in the court below the jury rendered a verdict in plaintiff's favor

for the sum of $2,735.89, for which judgment was entered by the court. Mrs. Green having died the cause was revived in the names of her executors, who have brought it before this court for review. The grounds upon which this action is based are set out in plaintiff's notice of motion, as follows:

"MRS. ADELINA D. GREEN,
   "*109 So. 3rd St., Richmond, Va.*

"You will please take notice that on the 9th day of April, 1923, at 11 o'clock A. M. of that day, or as soon thereafter as I can be heard, I shall move the Hustings Court, Part II, of the city of Richmond, Virginia, for a judgment against you in the sum of $3,053.89, with interest on $2,735.89, part thereof, from February 7, 1923, until paid, said sum being due from you to me as follows:

"For this, to-wit, that heretofore, to-wit, on the 5th day of June, 1920, you had on storage with me at my garage at No. 2035 west Broad street, this city, your electric automobile, subject among others to the conditions following:

"That you were to pay the sum of $37.00 per month for the storage of said car and the service of the persons employed in and about said garage, and in consideration of the premises you then and there undertook and agreed to accept the said employees at said garage as your employees or agents in and about the movement of said car to and from said garage, and to protect, indemnify and save me harmless from any and all liability whatsoever arising from the acts of any of said employees while moving your said car to and from said garage.

"That, heretofore, to-wit, on June 5, 1920, you ordered and requested one of the employees of the

said garage to be sent to your residence for the purpose: of bringing your said automobile to the garage, which was accordingly done, and while said employee was. acting under your orders and directions as aforesaid. and in and about your business, and while he was. conducting said automobile from your residence to said garage, he negligently ran over or collided with one John Thomas Moore at or near the intersection of Meadow and Broad streets, in the city of Richmond, thereby inflicting serious injuries upon him.

"And that thereafter, to-wit, on the 1st day of September, 1920, the said John Thomas Moore brought his action for damages by way of a motion for a judgment in the Hustings Court of the city of Richmond, Part II, against me for the purpose of recovering compensation for the injuries so received as aforesaid. And, thereupon, such proceedings were duly had in said action that on the 8th day of November, 1921, the said Thomas Moore recovered a judgment against me on account of the damages suffered by him as aforesaid in the amount of $2,500.00, all of which will more fully and at large appear from the record and. proceedings in said action.

"And, thereupon, I was compelled to pay, and did. pay, in satisfaction of said judgment, on February 7, 1923, the sum of $2,735.89, and was compelled to pay out and expend another large sum, to-wit, the sum of $300.00, in attorney's fees in and about the defense of said action.    Of all of which you, the said Mrs. Adelina D. Green, had due notice.

"By reason of the premises you, the said Adelina D. Green, became and are indebted to me, the undersigned, in the said sum of $3,035.89, first above mentioned, and being so indebted, promised to pay the same, and although often requested so to do, you

have hitherto failed and refused to pay the same or any part thereof.

"Wherefore, I shall, on the day and year aforesaid, move the said court for a judgment against you for the sum first above demanded, with interest thereon as aforesaid.

"HOWARD M. SMITH,
"By SCOTT & BUCHANAN,
*"His attorneys."*

The material facts of the case may be fairly stated to be as follows:

Defendant's automobile was first placed at plaintiff's garage sometime in the early part of the year 1918, by another garage keeper who had previously kept it and who was about to discontinue business. Mrs. Green at the time was an old lady and her daughter, Mrs. B. R. Dunn, who resided with her at her residence on south Third street, looked after her affairs. There was no formal contract between the parties, but plaintiff advised Mrs. Dunn of the terms and regulations then in effect at his garage for the regular monthly storage of automobiles, which were accepted by the defendant by leaving the car in his custody. According to the terms thus agreed to, in addition to certain other specified services, plaintiff contracted to deliver the car at the owner's residence and take it back to the garage once each day when requested by the owner; with the further understanding that plaintiff should not be responsible for any damage which might occur to the car while in the hands of his employees during such movements. In consideration of these services plaintiff was to receive the sum of $37.00 per month, which amount was thereafter paid by Mrs. Green upon receipt of his bill. In October of that year defendant's

car was damaged by a collision on the street when being driven to the garage by one of plaintiff's employees, and defendant paid the expense of the repairs without protest. In January, 1920, plaintiff had printed what he called a "folder" which bore on the title page this inscription:

"Service Rates of the Richmond Electric Garage
"Howard M. Smith, Proprietor,
"2035 W. Broad Street, Richmond, Va.
"Effective on and after January 1, 1920."

The center, or inside pages, of the folder contained a schedule of charges for divers specified services performed by the garage and other printed matter, which, so far as pertinent, read as follows:

"Rates by the Month.
"Regular storage, lead battery, $37.00.
"Regular storage includes car storage, delivering, cleaning, polishing, charging and flushing battery, and oiling with oil can wherever possible upon notice from the owner.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Delivery Service.
"Delivering and calling for car once each way daily (see note).
"An extra charge of twenty-five cents each way will be made for extra trips (see note).

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Note:   The owner agrees to accept our employees as his or her agent and to absolve this garage from any liability whatsoever arising while his or her car is in the hands of said employee at the request of and as agent of the owner.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   "

The back of the folder contained only a schedule of rates and terms relating to work and services in connection with automobile batteries.

The folder was mailed to all the patrons of the garage, including Mrs. Green, with the bills sent out in the early part of January, which action was repeated the following month; and copies were also placed by the employees of the garage, on several occasions, in defendant's car as well as all other cars kept at the garage on regular storage. It also appears that the above mentioned folder was the only document of the kind that plaintiff ever had printed and sent out to his customers.

On October 1, 1920, after Mr. Moore had been injured by one of the garage employees while taking Mrs. Green's car from her residence to the garage to be stored for the night, and after suit had been instituted by Moore against the plaintiff in the instant case to recover damages for said injuries, at the suggestion of his counsel, plaintiff mailed another copy of the folder to Mrs. Green, accompanied by the following letter:

"Richmond, Va., *October 1, 1920.*
"Mrs. A. D. Green,
          "*City.*
"Dear Mrs. Green:

"Please sign both of the enclosed service rate cards, returning one to us sometime today, and retaining one for your own files.

"No cars will be delivered after today unless this has been done.
                    "Very truly yours,
                "RICHMOND ELECTRIC GARAGE,
                         "E. D. Smith."

Under the printed matter on the title page of this copy of the folder plaintiff had stenciled: "Terms of this agreement accepted_____ Date_____."

The above letter was received by Mrs. Green and promptly answered as follows:

> "109 S. 3RD ST., RICHMOND, VA.
> "*October 1, 1920.*

"RICHMOND ELECTRIC GARAGE,
    "HOWARD M. SMITH, *Proprietor.*
"DEAR SIR:

"In compliance with your request in your letter of even date, I am enclosing agreement of acceptance of your service rates, said agreement being effective on and after this date and until revoked. You will notice that I have marked out 'effective on and after January 1, 1920,' as this is the first intimation of such rules and agreement, especially as to the delivery of cars.

        "Cordially yours,
                "A. D. GREEN,
                "By B. R. DUNN."

While it does not clearly appear, it may be inferred from the evidence that plaintiff addressed a similar letter to all his regular patrons at the same time he wrote Mrs. Green as above set forth.

The defendant, Mrs. Green, on account of her advanced age and infirmities did not appear at the trial of the instant case, but it was testified by Mrs. Dunn that she acted as agent for her mother, and that she had no knowledge or intimation of the terms contained in the folder until her attention was called to it by plaintiff's letter to Mrs. Green of October 1,

1920, enclosing a copy of same with a blank form of acceptance stamped on the title page as above stated. This witness also testified that she had received several folders previous to that date with plaintiff's monthly bills but had not paid any attention to them.    It does not appear that Mrs. Green herself ever received or saw a copy of the folder.

[1] The only error assigned which is properly preserved and presented for the consideration of this court by a bill of exceptions relates to the action of the trial court in refusing to set aside the verdict of the jury on the ground that the same was contrary to the law and the evidence, and because of misdirection by the court in its instructions to the jury, but in our view of the case, we deem it only necessary to consider the question of whether, as a matter of law, the evidence presented by the record is sufficient to sustain the verdict and judgment rendered against the defendant.    As has been noted, plaintiff seeks to recover in this action upon an alleged contract by which, it is claimed in his declaration, defendant agreed to accept plaintiff's garage employees as her servants and to indemnify, and save him harmless from any and all liability whatsoever arising from the acts of any of said employees while moving her car to and from said garage.    In the absence of agreement the defendant is in no sense liable to the plaintiff for the injuries inflicted upon Mr. Moore under the circumstances disclosed by the record.   The plaintiff alone had the right to select and engage the employees of his garage, the power to discharge and control them, and he alone was responsible for the payment of their wages.    Said employees were, under these circumstances, plaintiff's servants (*Atlantic, Etc., R. Co.* v. *Tredway*, 120 Va. 735, 93 S. E. 560, 10 A. L. R. 1411),

and he—not Mrs. Green—was legally responsible for the negligence of said employees while engaged in the performance of services which he had contracted to perform for the defendant, and for which he was compensated.

[2] The owner of an automobile is not liable for the negligence of a bailee of property over which the owner is exercising no control at the time of the injury, and such negligence cannot be imputed to the bailor. *Virginia Railway and Power Company* v. *Gorsuch,* 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838. The real question is, therefore, was there a valid and subsisting contract between the plaintiff and Mrs. Green, at the time Mr. Moore received his injuries, by which the defendant bound herself to indemnify the plaintiff against the consequences of all such acts of negligence on the part of his employees?

[3, 4] It is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts, and, in order that this mutuality may exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct which evince the intention of the parties to contract, and that their minds have met may be shown by direct evidence of an actual agreement, or by indirect evidence of facts from which an agreement may be implied. 13 Corpus Juris, pages 241-266; *Richmond Eng., Etc., Corp.* v. *Loth,* 135 Va. 110, 115 S. E. 774; *Thompson* v. *Artrip,* 131 Va. 347, 108 S. E. 850; *Colgin* v. *Henley,* 6 Leigh (33 Va.) 85; *Belmont* v. *McAllister,* 116 Va. 285, 81 S. E. 81. It is manifest, however, that before one can be held to have accepted the offer of another, whether such offer is made by word or act, there must

have been some form of communication of the offer; otherwise there could be no assent and, in consequence, no contract. *McCully* v. *Phoenix Mutual Life Ins. Co.*, 18 W. Va. 782; *Dyer* v. *Duffey*, 39 W. Va. 148, 19 S. E. 540, 24 L. R. A. 339. In the instant case the plaintiff relies upon the "note" printed in the folder as constituting the terms of the proposed contract; on the fact that said folder was mailed to Mrs. Green on several occasions with her monthly bills and placed in her car, as a communication of said terms; and on her conduct in continuing to keep her car in his garage as an implied acceptance of the terms specified in said note. The question, therefore, of whether Mrs. Green agreed to, and is bound by, the terms of the "note" in the main depends upon whether the means employed by the plaintiff to communicate such terms were sufficient, under the circumstances, to constitute her act in the premises an implied acceptance of the said terms. The rule as to when the delivery of a paper containing the terms of a proposed contract amounts to an acceptance, is thus stated in 13 Corpus Juris, at page 277:

[5, 6] "A contract may be formed by accepting a paper containing terms. If an offer is made by delivering to another a paper containing the terms of a proposed contract and the paper is accepted, the acceptor is bound by its terms; and this is true whether he reads the paper or not. When an offer contains various terms, some of which do not appear on the face of the offer, the question whether the acceptor is bound by the terms depends on the circumstances. He is not bound as a rule by any terms which *are not communicated* to him. But he is bound by all the legal terms which are communicated. This question arises when a person accepts a railroad or steamboat

ticket, bill of lading, warehouse receipt, or other document containing conditions. He is bound by all the conditions whether he reads them or not, *if he knows that the document contains conditions.* But *he is not bound by conditions of which he is ignorant, even though the ticket or document contains writing, unless he knows that the writing contains terms, or unless he ought to know that it contains terms, by reason of previous dealings, or by reason of the form, size, or character of the document.*" (Italics supplied.)

We have been referred to no Virginia case involving the precise question presented here, nor have our investigations disclosed any, but the above quoted rule is supported both by sound reason and by the majority of opinion in other jurisdictions in which the question has arisen. The following will serve to illustrate the rule.

In *Neuman* v. *Nat. Shoe & Leather Exchange*, 56 N. Y. Supp. 193, 26 Miss. Rep. 388, the plaintiff placed a claim for collection in the hands of a New York collection agency that he had employed on several occasions, and which delivered to him a paper which on its face was an ordinary receipt; but appearing on the reverse side, under the caption "Collection Department," were printed the agency's rates of commission, and a clause stating that they did not guarantee clients against loss from the dishonesty of an attorney or the suspension of a bank. The agency sent the claim to an attorney who collected it and failed to account for the proceeds. The plaintiff thereupon sued the agency for the amount. He admitted possession of the receipt by mail or by being handed to him, but testified that the conditions on the back of the paper were never brought to his attention, and that he did not know of any limitation of defendant's liability. In the course of its opinion the court said:

"Where a party receives a paper which, from the circumstances of the transaction, he has a right to regard simply as a receipt or voucher, and no notice is given to him that it embodies the terms of a special contract, or is intended to subserve any other purpose than a receipt, his omission to read the paper is not *per se* negligence, and he is not, as a matter of law, bound by its terms  *   *   *   *   *.    The defendant in order to relieve itself from liability is bound to establish the contract.  *Grossman* v. *Dodd*, 63 Hun. 326, 17 N. Y. Supp. 855; *Blossom* v. *Dodd*, 43 N. Y. 264 [3 Am. Rep. 701]; *Madan* v. *Sherrard*, 73 N. Y. 329 [29 Am. Rep. 153].   *   *   *   *   In the absence of any circumstances or limitation indicating it to be anything other than an ordinary voucher, he was justified in so regarding it.   The minds of the parties did not meet on the subject of a contract embracing the restriction invoked, hence it cannot avail the defendant."

In *Authors & Newspapers Asso.* v. *O'Gorman Co.*, 147 Fed. 616, where the owners and publishers of a copyrighted book sold, through an agent, copies thereof with a printed notice on the inside of the cover, restricting purchaser's title and requiring that same should not be sold prior to August 1, 1907, it was held:   "The notice in the book does not, without any communication to the purchaser, become a part of the contract between the agent and purchaser.   It is a mere notice, and such notice does not become incorporated in the contract unless its terms are distinctly declared and deliberately accepted by the purchaser."

In *Dodge* v. *Nashville C. & St. L. R. Co.*, 142 Tenn. 20, 7 A. L. R. 1229, 215 S. W. 274, the plaintiff deposited his suit case in the check room of a railway station, for which he received a numbered check.   On the face

of the check was printed in red letters: "Notice.—Not responsible for an amount to exceed $10.00 on any article covered by this check." The baggage was lost and plaintiff sued to recover its value, and the defendant contended that the notice printed on the check constituted a contract. Plaintiff's attention was not called to the statement on the check, and there was no evidence that he read it or knew of the statement until after the loss was discovered.

The Tennessee court quoted with approval from the opinion of the court in the case of *Healey* v. *New York C. & H. R. Co.*, 138 N. Y. Supp. 287, 153 App. Div. 516, as follows:

" 'The plaintiff having no knowledge of the existence of the special contract limiting the liability of the defendant to an amount not exceeding $10.00, and not being chargeable with such knowledge, the minds of the parties never met thereon, and the plaintiff cannot be deemed to have assented thereto, and is not bound thereby. * * * * * * *.

" 'If the plaintiff knew that the defendant had limited its liability to $10.00, either by his attention being called to it, or otherwise, then, of course, the law would deem him to have assented to it, so that a binding contract would be affected. If he did not know it, I think the law imposed no duty upon him to read his check to find whether or not there was a contract printed thereon, or that he was guilty of neglect in not so reading it, for he had no reason to apprehend that a contract was printed thereon.' "

In *Toledo Computing Scales Co.* v. *Garrison*, 28 App. (D. C.) 243, the Supreme Court of the District of Columbia said: "The practice of attempting to incorporate conditions in a contract by endorsement of the same on the back or any other part thereof is

one not to be encouraged, and there seems no greater reason for holding one bound by such endorsement on a contract of this nature, unless observed and assented to by him, than in the case of a carrier's contract for transportation.''

In line with the above cases may be cited the following:

*Grossman* v. *Dodd*, 17 N. Y. Supp. 855, 63 Hun. 324; *Id.*, 33 N. E. 642, 137 N. Y. 599; *Tichnor* v. *Hart*, 52 Minn. 407, 54 N. W. 369; *McMillan* v. *M. S. & N. I. R. Co.*, 16 Mich. 79, 93 Am. Dec. 208.

''An offeree is not bound by the unknown terms of a document by his acceptance of the same without objection, when the document delivered to him purports to be, and would by a reasonable man be understood to be, merely a check or voucher, and not a contract, as in the case of a baggage receipt or check, an ordinary railroad ticket, and other receipts or papers of a similar character.''    13 Corpus Juris, page 278, and cases there cited.

There was nothing on the face of the folder, nor in its form or character, to indicate that it contained the terms of the contract which plaintiff has attempted to establish in this case, or any other contract imposing obligations of such a nature upon the defendant.   The paper only purported to contain a schedule of rates for services at plaintiff's garage, and defendant had no reason, on account of her previous dealings with the plaintiff or otherwise, to know that plaintiff proposed, by mailing the folder to her along with his monthly bill, and placing a copy of it in her car, to commit her to a new contract of such unusual terms.

Considering the circumstances under which she received the folder, she was justified in assuming it to be only what it purported to be, and, as she already

knew the rates prevailing at plaintiff's garage, was justified in paying no attention to it, as she did. There is no evidence that either Mrs. Green or Mrs. Dunn, her agent, ever read the "note" or knew it was printed in the folder until they received plaintiff's letter of October 1, 1920, or that it was brought to their notice in any way prior to that time. If plaintiff proposed to form a special contract of this kind he should have, at the least, called Mrs. Green's attention to the terms contained in the folder as he undertook to do, upon the advice of counsel, after the accident to Mr. Moore.

Under these circumstances we are of the opinion that the plaintiff has failed to establish the contract alleged in his declaration in the manner that the law requires, and is not, as a matter of law, entitled to recover over from Mrs. Green the damage he was compelled to pay Mr. Moore for the negligence of his servant.

Before concluding, we should perhaps refer to the evidence of three of plaintiff's garage employees, who testified as to statements made to them by Mrs. Green or Mrs. Dunn on divers occasions—when they requested that the car be sent for to be taken to the garage—in regard to defendant's responsibility for the car and as to their insistence that the garage should always send a competent driver. We do not consider it necessary to quote the testimony of these witnesses in detail but deem it sufficient to say that after careful scrutiny of their statements we find nothing in this evidence to show that either Mrs. Green or Mrs. Dunn ever received or read the folder or had any knowledge of the special terms embodied in it. In view of the fact that Mrs. Green accepted responsibility for any loss or damage to her own car in moving it to and from the garage, by the terms of the original

agreement for storage between the plaintiff and Mrs. Dunn, it was only natural prevision on her part that she should have cautioned plaintiff's employees about driving the car, and should have also requested the garage to send some one she knew to receive it from her.

The statements made by defendant to these witnesses, as testified to, were entirely consistent with her admitted liability in regard to the safety of her own automobile.    They furnish no proof that she knew of or had accepted the terms of the contract upon which plaintiff is attempting to hold her liable.    For the foregoing reasons the judgment complained of will be reversed and judgment entered for the defendant.

*Reversed.*

## ON PETITION FOR REHEARING.

April 22, 1926.

PER CURIAM:

[8, 9] It appears from the record that the jury returned their verdict on the 8th day of October, 1923; that the defendant, Mrs. Green, died on the 6th day of March, 1924; and that the court on the 28th day of April, 1924, overruled the motion for a new trial, and rendered judgment on the verdict against the defendant as if she were still living.    It is contended in the petition for rehearing that the judgment, having been rendered against a dead person without having the action revived, is a nullity.    Authority to render the judgment under such circumstances is expressly conferred upon the trial court by the provisions of section 6164 of the Code of Virginia.    On May 20, 1924, the

death of Mrs. Green was suggested and the proceeding revived against her executors. The executors of the defendant were then the proper parties to apply for a. writ of error.   *Jackson* v. *Wickham,* 112 Va. 128, 70 S. E. 539.

The other matters mentioned in the petition have already had the full attention of the court.

The rehearing is therefore denied.

*Rehearing denied.*