Syllabus.

# Richmond.

## KAIN AND OTHERS v. ANGLE.

November 17, 1910.

Absent, Cardwell, J.

1. WITNESSES—*Competency—Conviction of Felony in United States Courts.*—A person serving a term of penal servitude under a conviction for fraud in a United States court sitting in this State is not thereby rendered incompetent to testify in the courts of this State. The Virginia statute only disqualifies those convicted in a court of this State.

2. INSTRUCTIONS—*Conflicting Theories of Case.*—Where conflicting theories of a case are presented by the evidence, each party is entitled to have his view of the case presented to the jury by proper instructions.

3. EVIDENCE—*Compromise—Admission of Fact.*—The statement of a fact made in a proposition of compromise which was rejected is nevertheless admissible in evidence, if it was an independent admission of a fact, merely because it was a fact.

4. INSTRUCTIONS—*Conflicting Theories—Sale of Stock—Misrepresentations.*—If, in an action to recover the purchase price for sixty *per cent.* of the common stock of a company, the purchaser defends on the ground that the seller represented that the entire capital stock of the company consisted of common stock, when in fact there were thirty-nine shares of preferred stock, and there is evidence tending to support that defense, the question whether or not, on account of the misrepresentation, a credit should be allowed the purchaser for the preferred stock, should be submitted to the jury under proper instructions from the court.

5. PLEADING—*Declaration—Amendment—Inserting Beneficial Plaintiff.*—A plaintiff may, after verdict in his favor, amend his declaration by inserting the name of a beneficial plaintiff after his own name.

Error to a judgment of the Corporation Court of the city of Roanoke in an action of assumpsit. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Smith & Wingfield*, for the plaintiff in error.

*Hall, Woods & Jackson*, for the defendant in error.

Keith, P., delivered the opinion of the court.

T. M. Angle, suing for the benefit of Pigg and others, filed a declaration in assumpsit which contains the common counts and a special count, from which it appears that he sold to Hagan, Kain and Simpson sixty *per cent.* of the common stock of the Casper Company, Incorporated, ———— shares of which he agreed to deliver at once or within a few days, and the other eighty-five shares, which were then held by the American Distilling Company to secure a debt of $6,500 due from the plaintiff to said company, were to be redeemed and delivered to the defendants within two years from the 1st day of January, 1908, that he further agreed to convey to O. F. Hagan at once or within a few days from the date of the sale of said stock certain real estate, upon which there were liens amounting in the aggregate to $41,000—twenty-one monthly notes due the Columbia Trust Company for $204.17 each; three six months notes to John McCarthy for $500 each; one four months note to City National Bank for $5,000, and one note to Rada Pigg for $30,000; all of which were secured by deeds of trust upon the property; and he further agreed to give possession of said real estate at once or within a few days after the purchase, and that in consideration of the delivery of said stock and the conveyance of said real estate the defendants promised and agreed to pay to the plaintff $60,-

000; that about $41,000 evidenced by the above mentioned liens, the defendants agreed to assume and to pay for plaintiff as the same became due, $6,500 due the American Distillery Company upon the delivery to them by the plaintiff of the eighty-five shares of stock pledged as security, and the balance of $12,387.47 in cash. The plaintiff further avers. that in pursuance of said agreement he did deliver to the defendants the shares of stock which under this agreement were to be delivered, and they were accepted by the defendants; and that he did sign and deliver a deed conveying the real estate to them, and turned over and delivered to them the distillery plant and real estate, in accordance with the agreement, and the defendants then and there paid to him upon the cash payment then due the sum of $3,036.49, but refused to pay the residue in accordance with the plaintiff's demand.

The defendants appeared in answer to this suit, and filed the following paper:

"The defendants deny that the plaintiff was, at the time in the declaration mentioned, the owner of any shares of the stock of the Casper Co., Inc., and deny each and every allegation of the plaintiff's declaration." This may perhaps be taken as the equivalent of the plea of non-assumpsit.

It is further set out in this paper, that the plaintiff "falsely and fraudulently represented to defendants that the entire capital stock of the Casper Co., Inc., consisted of 500 shares of common stock, and that the debts of said company at the time in the declaration mentioned, exclusive of the liens on its real estate, would not exceed the amounts owing to said company, while as a matter of fact the company had issued 500 shares of capital stock and 39 shares of preferred stock, and the indebtedness of the company (exclusive of the liens on its real estate) exceeded the amounts owing to it by about $6,000;" that "T. M. Angle sold and agreed to deliver to the defendants sixty per cent. of the entire plant and property

of the Casper Company, Incorporated, at the price of $60,-000, and in making the sale it was agreed between the parties that the solvent accounts payable to the Casper Company should balance or be equal to the accounts payable by it, and the transaction was consummated by the delivery to the defendants of sixty *per cent.* of the common stock of the Casper Company—it being represented to defendants that the entire outstanding capital stock of the Casper Company was $50,000 or 500 shares;" and that "after the transaction was closed in the manner above set forth, the defendants discovered that there was about $3,900 of preferred stock issued and outstanding, and that the accounts owing by the Casper Company exceeded the amounts owing to it by $6,000, and the defendants are damaged by reason thereof $12,000."

The case was submitted to a jury, who were sworn "to speak upon the issue joined;" and having heard the evidence they found a verdict in favor of the plaintiff for $4,980.75. Upon this judgment was entered, to which a writ of error was awarded.

The first error assigned is to the admission of the deposition of T. M. Angle, whose competency as a witness was objected to because he had been convicted of a fraud upon the Federal revenue laws and sentenced to confinement in the United States penitentiary at Atlanta, Ga., by the United States Court for the Western District of Virginia.

This assignment seems to be disposed of by the decision of this court in *Samuels* v. *Commonwealth*, 110 Va. 901, 66 S. E. 222, where it was held, that a witness convicted of perjury in a United States court sitting in this State is not thereby disqualified from testifying in one of the courts of this State. The Federal statute expressly limits the disqualification to giving testimony in any court of the United States, and the Virginia statute intended only to disqualify persons convicted of perjury in a court of this State.

Objection was taken to the giving of certain instructions,

Nos. 1, 2, 3 and 5. The plaintiffs in error concede that they correctly state the law, but object to them upon the ground that they are based upon the theory that there was a warranty, and that they entirely ignored evidence of the defendants.

We have frequently held that the plaintiff and defendant are each entitled to have his view of the case presented to the jury by proper instructions. The instructions objected to present the case for the plaintiff, and the objection to them is not well founded.

Instruction No. 4 asked for the plaintiff is as follows: "The court instructs the jury that if they believe from the evidence that the plaintiff, Angle, promised or agreed to make the accounts receivable and the accounts payable of the Casper Company balance, and that such promise or agreement was made by him in an effort to compromise and adjust the matters in dispute between him and the defendants, then they shall not regard said promise or agreement as evidence against him in this case."

We think instruction No. 4 states the proposition too broadly, for, as was held in *C. & O. Ry. Co.* v. *Stock*, 104 Va. 97, 51 S. E. 161, quoting with approval from 1 Greenleaf (16th ed.) sec. 192, "it should have been received, if it was an indepent admission of a fact, merely because it was a fact."

The plaintiffs in error asked for four instructions, the first of which the court gave, and refused to give the second, third and fourth.

The second instruction is as follows: "The court instructs the jury that if they believe from the evidence that the defendants agreed to pay $60,000 for sixty *per cent*. of the entire property of the Casper Company, Inc., and that out of the purchase money all of the debts of the company were to be paid and the balance of the $60,000 was to be paid in cash, and that Angle furnished a statement of the debts so that such settlement could be made and it was made, but

that in making such settlement it was ascertained that there was certain preferred stock which the defendants did not acquire, and they retained out of the purchase the value of said preferred stock and paid the plaintiff the balance then found due, then they must find for the defendant."

Defendants in error sold and plaintiffs in error bought sixty *per cent.* of the common stock of the Casper Company, and it appears that in addition to the common stock there were 39 shares of preferred stock. Preferred stock does not come within the description of either "common stock," as stated in the declaration, or of "capital stock," as described in the statement of defense. It entitles the holder, however, to receive dividends from the earnings of the company before the common stock can receive a dividend from such earnings. "In other words, it is stock entitled to dividends from the income or earnings of the corporation before any other dividend can be paid. The relation of debtor and creditor does not exist between the preferred stockholders and the corporation, and the right to a preferred or guaranteed dividend is not a debt until the dividend is declared. A dividend is money paid out of profits by a corporation to its shareholders. A preferred dividend is nothing more than that which is paid to one class of shareholders in priority to that to be paid to another class." Cook on Stock & Stockholders, (3rd ed.), sec. 267.

The representation that there were 500 shares of common stock, of which the defendants purchased sixty *per cent.* would certainly be false if it appears that there were 539 shares of common stock. The defendants are in a worse position if there were in addition to the 500 shares of common stock 39 shares of preferred stock, for the 39 shares of preferred stock are entitled to their dividend before anything is paid on the common stock, while if the excess of stock over that which was represented had been common stock, the 39 shares would have received their dividend *pari passu* with

the 500 shares. There is evidence to support the theory of plaintiffs in error, and the question should have been submitted to the jury by proper instructions to enable them to say whether or not a credit should have been allowed the defendants on their purchase price for the 39 shares of preferred stock.

After the jury had rendered their verdict, the plaintiffs in error moved in arrest of judgment, upon the ground that just before the trial commenced the plaintiff amended his declaration by inserting after his name, "T. M. Angle," the words, "who sues as attorney in fact" for the benefit of J. H. Pigg and others; the contention being that a plaintiff cannot maintain a suit as attorney in fact for another; that plaintiffs must sue in their own names; that no judgment could be properly pronounced or entered in such a suit; and that when T. M. Angle amended his suit so as to change his character from a plaintiff to that of an attorney in fact for another he amended himself out of court; and for the further reason that no judgment entered by this court would be a bar to a suit by T. M. Angle in his own right, or by those for whom he claimed to act as attorney in fact.

It is conceded by plaintiffs in error that if the pleader had amended his declaration so as to show that while T. M. Angle was the nominal plaintiff he sued for the benefit of another, such declaration would be good. From the judgment in the case it appears that that was the view taken by the corporation court, for the judgment entered upon the verdict recites that T. M. Angle, who sues for the benefit of J. H. Pigg and others, shall have and recover of the defendants the sum of $4,980.00, the amount ascertained against them by the verdict of the jury aforesaid.

As the case has to be reversed for the reasons already given the court can amend the declaration by striking out the phrase to which plaintiffs in error object.

There are other objections to the admission of testimony

which may not arise upon another trial, and are not of sufficient importance to demand further consideration.

Upon the whole case, we are of opinion that the judgment should be reversed and the cause remanded to the corporation court for a new trial to be had in accordance with the views herein announced.

*Reversed.*