## Staunton

HELEN E. HENDRICKSON, ADMINISTRATRIX OF GEORGE W.
MEREDITH, DECEASED, V. MARY MEREDITH.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory
and Browning, JJ.

The opinion states the case.

*J. L. Dillow* and *W. B. Snidow,* for the plaintiff in error.

*Williams & Farrier,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is an action against the estate of George W. Meredith to recover the value of services rendered him during

several years immediately preceding his death. From a verdict and judgment in favor of plaintiff, defendant obtained this writ.

On the first day of January, 1932, George W. Meredith died intestate, leaving as his only heirs at law and next of kin one son a weak-minded, deaf mute, and one daughter, Helen E. Hendrickson, who qualified as administratrix on the estate. His personal property was appraised at $7,500; no one testified as to the value of his real estate, which consisted of two farms, containing 200 acres each.

Mary Meredith, plaintiff in the trial court, testified that she was twenty-three years of age; that for the past five or six years she had been living in the home of George W. Meredith, except that on July 6, 1929, when Mrs. Meredith, her half-sister, died, she left and went to the home of her parents. Shortly thereafter, George W. Meredith sent for, and made a contract with her, whereby in consideration of her promise to serve and take care of him so long as he lived, he promised to pay her $2.50 per week, furnish her board and clothes, and make provision for her (supposedly by will), and that she was to have a home on his farm so long as he lived. These services she performed. She lived in his home as a member of his family until his death, performing all the household work, such as cooking, washing, ironing, looking after the chickens, cows, and at times other live stock. In addition, she frequently acted as chauffeuse when he went out on business or pleasure, and during the last two years of his life performed the duties of a practical nurse. At the time of decedent's death, she had been furnished board, lodging and clothes, and had received all except between $75 and $100 of the $2.50 per week promised, but decedent died without having made any other provision for her.

Helen E. Hendrickson testified that she had heard both plaintiff and her father, in plaintiff's presence, state that the full compensation agreed upon by the parties was $2.50 per week, board and clothes, and that plaintiff had

told her after her father's death that all the estate owed her was between $75 and $100.

This testimony of the interested parties leaves only one provision of the contract between decedent and plaintiff in dispute, *i. e.,* the promise whereby decedent "was to make provision for her (plaintiff) and she was to have a home there (on one of decedent's farms) as long as she lived."

Corroborating evidence was introduced by both parties, upon which the case was submitted to the jury. Most of the errors assigned deal with instructions offered and refused. Plaintiff requested, and the court gave, only one instruction, reading thus:

"The court instructs the jury that an implied contract is created by law to establish justice between parties. It does not require mutual assent, but may bind a party against his will. And the court further instructs the jury that if they believe by a preponderance of the evidence that the plaintiff, Mary Meredith, performed services of value for George W. Meredith, deceased, at any time within three years prior to said George W. Meredith's death, for which no certain compensation was agreed on, and the said George W. Meredith accepted and profited by such services, then it shall be your duty to find for the plaintiff, Mary Meredith, in such an amount as you may think said services were reasonably worth to the said George W. Meredith, deceased."

Defendant's objections to the above instructions will be treated under four heads.

(1) The first, and main, objection urged is that the evidence for plaintiff was not sufficient to support an instruction on an implied contract. Assuming that the promise of decedent was to pay the stated weekly sum, furnish board and clothes, and provide a home for plaintiff during her life, it is apparent that the contract is too vague and indefinite to be enforced specifically. Judge Buchanan, in *Roller* v. *Murray,* 112 Va. 780, 72 S. E. 665, 666, 38 L. R. A. (N. S.) 1202, Ann. Cas. 1913B, 1088, said:

■ "The general rule is that where an agreement is treated as void merely because it is not enforceable, as in cases under the statute of frauds or of parol agreements where the contract is not in writing and money is paid or services are rendered under it by one party and the other avoids it, there can be a recovery upon an implied assumpsit for the money paid or the value of the services rendered. In such cases there has been the mere omission of a legal formality, and while by the terms of the statute he must lose the benefit of his contract, yet, there being nothing illegal or immoral in it, he is entitled to be compensated for the services rendered under it."

"Services not gratuitous, and neither *mala in se* nor *mala prohibita*, rendered under a contract that is invalid or unenforceable, may furnish a basis for an implied or constructive contract to pay their reasonable value." *Winton* v. *Amos*, 255 U. S. 373, 41 S. Ct. 342, 350, 65 L. Ed. 684; 28 R. C. L. p. 685.

"It is a general rule of law that he who gains the labor or acquires property of another must make reasonable compensation for the same. Hence, when one furnishes labor to another under a contract which, for reasons not prejudicial to the former, is void and of no effect, he may recover the value of his services on a *quantum meruit.* * *

"Where work is done under an express contract, which does not fix the compensation therefor, the person performing the work without doubt is entitled to recover on a *quantum meruit* whatever the work is worth. The law allows a reasonable compensation, and permits the jury to take into consideration all the facts." 28 R. C. L. pp. 693, 695.

In Burks Pleading and Practice (2d Ed.) 126, quoting from Clark on Contracts, this is said:

■ "Where an agreement is not illegal, but merely void, or unenforceable, and one of the parties refuses to perform his promise after performance or part performance by the other, the law will create a promise to pay

for the benefits received." See *McCrowell* v. *Burson*, 79 Va. 290.

The testimony for plaintiff brings her case squarely within these general rules, and she was entitled to an appropriate instruction on the law of implied contracts.

■ (2) The second objection to the instruction was based upon the contention that George W. Meredith stood *in loco parentis* to plaintiff. Defendant cites several Virginia cases in which it is stated that as between parties standing *in loco parentis* there can be no recovery for services performed, in the absence of proof of an express contract, and states that the evidence in this case establishes that relation between decedent and plaintiff. The uncontradicted evidence is to the contrary.

It appears that plaintiff, who was a half-sister of George W. Meredith's wife and a cousin (what degree is not shown) of decedent, was requested, when she was eighteen years of age, to leave her parents' home and perform certain household duties for decedent and his wife. She continued to perform these duties until July, 1929, when her half-sister, decedent's wife, died, and she immediately left decedent's home and returned to her parents. Shortly thereafter decedent sent for her and renewed his contractual relations with her.

There was no obligation, moral or legal, imposing upon plaintiff the duty to leave her parents' home and enter the home of decedent for the purpose of ministering to his household and to him personally. Simply because she was treated as a member of the family after she entered decedent's home under the circumstances of this case, creates no implication that she was performing the work gratuitously. There is no evidence which tends to show that at any time George W. Meredith attempted to exercise parental control over this young lady, or that she treated or regarded him as her foster father.

Not only that, the evidence of defendant conclusively shows that the relation between the parties was that of employer and employee, because she testified that she

heard both parties say that plaintiff was to receive $2.50 per week and her board and clothing in compensation for her services. Thus by defendant herself it is established that at the time plaintiff was performing the work in question she intended to charge therefor, and that decedent accepted the services with full knowledge that plaintiff entertained such intention. See *Hodge* v. *Hodge,* 47 Wash. 196, 91 Pac. 764, 11 L. R. A. (N. S.) 873, and note. There is no merit in this contention.

(3) The third objection is to that part of the instruction reading thus:

"The court instructs the jury that an implied contract is created by law to establish justice between parties. It does not require mutual assent, but may bind a party against his will."

The object of all principles or rules of law promulgated is to do justice between contending parties. If that is the interpretation of the first sentence in the instruction it is correct. There are quasi contracts, or *"contracts implied in law,"* in which the assent of the parties is immaterial. In such cases the liability exists from an implication of law that arises from the facts and circumstances, independent of agreement or presumed intention. In such cases, the promise is implied from the consideration received, there the legal duty imposed upon the defendant defines the contract. *City of Norfolk* v. *Norfolk County,* 120 Va. 356, 91 S. E. 820; *Grice* v. *Todd,* 120 Va. 481, 91 S. E. 609, L. R. A. 1917D, 512; 13 C. J. 244.

But the facts do not bring this case within this class of quasi contracts. It belongs to that class of cases usually referred to by text writers as "contracts implied in fact," and the only difference between an express contract and a contract implied in fact is that in the former all of the terms and conditions are expressed between the parties, while in the latter some of the terms and conditions are implied in law from the conduct of the parties. Thus: "Where one renders services for another at the latter's request, the law, in the absence of an express

agreement, implies a promise to pay what the services are reasonably worth, unless it can be inferred from the circumstances that the services were to be rendered without compensation." Burks Pleading and Practice (2d Ed.) 116. See, also, 6 R. C. L. 587.

■ Without further discussion, these authorities are sufficient to show that, even as abstract propositions of law, the principles enunciated in that part of the instruction quoted are not fully stated, and even if they were, they are abstract principles which have a tendency to confuse, rather than to clarify, the issue to be decided by the jury.

(4) The fourth objection to the instruction is that it directed a verdict for plaintiff upon a partial statement of the evidence. The same point is suggested in the exception taken to the action of the court in overruling the motion to set aside the verdict because it was excessive. These exceptions and assignments of error are sufficient for us to consider the fact that the jury were not told to deduct from the reasonable value of the services performed by plaintiff the amount of compensation that she had actually received, i. e., $2.50 per week and her board and clothes, although no emphasis is made on this point, either in the argument or in the brief.

■ When a party's legal rights have been invaded, the object of law is to allow such party full compensation for the violation of his rights, whether such violation arose *ex contractu* or *ex delicto*. Plaintiff's position is that decedent has accepted her work and labor and has failed to fully compensate her therefor. The extent to which her legal rights have been invaded by decedent, if there has been any invasion, is the reasonable value of the work and labor performed, less the amount of compensation, whether in money or otherwise, which she has received. It is admitted that she has received board and clothes, the value of which is not shown by the testimony, and a large part of the weekly consideration which she was promised.

"If there were a valid and subsisting special contract, that would control; but where, though an attempt has been made to bring about such a contract, it has proved unavailing, the attempted contract is ordinarily of no consequence save as it shows the expectation of the parties that compensation for the services was to be made. It therefore leaves unimpaired the legal implication arising out of the rendition of the services upon request and in the known expectation of receiving compensation therefor. The measure of recovery is the reasonable value of the services performed, and not the amount of benefit which actually accrued from them to him for whom they were performed. *Grant* v. *Grant,* 63 Conn. 530, 542, 29 Atl. 15, 38 Am. St. Rep. 379; *Gay* v. *Mooney,* 67 N. J. Law, 27, 50 Atl. 596.

"The same principles apply where the parties have attempted to make a contract which is void because its terms are too indefinite, but where one party has, in good faith, and believing that a valid contract existed, performed part of the services which he had promised in reliance upon it. He has performed those services at the request of the other party to the contract, and in the expectation, known to the other, that he would be compensated therefor. Here is a sufficient basis for an implication in law that reasonable compensation would be made. The attempted special contract being void, there is nothing to overcome that implication. *Vickery* v. *Ritchie,* 202 Mass. 247, 88 N. E. 835, 26 L. R. A. (N. S.) 810. * * *

"In fixing the amount of that compensation, however, a proper deduction must be made for any benefit that has accrued to the plaintiff himself by reason of the work he did upon the premises at the defendant's request." *Kearns* v. *Andree,* 107 Conn. 181, 139 Atl. 695, 698, 59 A. L. R. 599, 603.

See, also, *O'Donnell* v. *Sipprell,* 163 Wash. 369, 1 Pac. (2d) 322, 76 A. L. R. 1405; *Brown* v. *Woodbury,* 183 Mass. 279, 67 N. E. 327. In the latter case it was held that part

payment in board for services of plaintiff under his contract of employment did not prevent him from recovering the value of his services on a *quantum meruit* basis, less the amount of board furnished.

The foregoing discussion has been confined to the exceptions and assignments of error made by defendant in her petition. From the conclusion reached, it is apparent that the case will have to be remanded, hence before we leave this instruction we desire to point out that there is another error therein to which no exception was made, *i. e.*, the measure of recovery is thus stated: "Such an amount as you may think said services were reasonably worth to the said George W. Meredith, deceased." In *Campbell County* v. *Howard*, 133 Va. 19, 112 S. E. 876, and *Old Dominion Trans. Co.* v. *Hamilton*, 146 Va. 594, 131 S. E. 850, 46 A. L. R. 186, it was held that the measure of recovery in such cases did not depend upon the necessity of the defendant and the value of the services to him, but upon the reasonable value of the services in themselves. The distinction between the two rules is fully discussed in those cases and need not be repeated here.

The refusal of the trial court to give any of the six instructions requested by defendant is the ground of six separate assignments of error. All of these instructions are in conflict with the views expressed above, and hence there was no error in the action of the court in refusing them.

The next assignment of error is to the admission of the following evidence:

"That Mary Meredith, Leonard Meredith and W. E. Strader, after the death of George Meredith, talked with him, Hoge, (witness) and that Mary had him to do some figuring for her on what George Meredith owed her and that from her figures it appeared that she was due from $75 to $100 on the $2.50 weekly. That later on Helen E. Hendrickson and Mary Meredith came to his office and *there attempted to compromise their differences* and that he heard the conversation; that Mary claimed $1,500 and

that Helen Hendrickson said that it was too much, and that Mary finally came down to $1,250 and that they could not settle. That he advised them that it was best to settle the case out of court and advised a compromise and that Helen once said that she would *give as a compromise* $1,000. That all of the above transpired in an *effort to compromise the claims* between them." (Italics supplied.)

In *Brown* v. *Shields,* 6 Leigh (33 Va.) 440, quoting from an English case, it is said: "The essence of an offer of compromise is that the party making it is willing to submit to a sacrifice, and to make a concession; * * * "

Judge Keith, in *C. & O. R. Co.* v. *Stock,* 104 Va. 97, 103, 51 S. E. 161, 163, quoted the following from Greenleaf: "It is to be observed that confidential overtures of pacification, and any other offers or propositions between litigating parties, expressly stated to be made without prejudice, are excluded on grounds of public policy. * * * But if it is an independent admission of a fact, merely because it is a fact, it will be received; and even the offer of a sum by way of compromise of a claim tacitly admitted is receivable, unless accompanied with a caution that the offer is confidential." See *Kain* v. *Angle,* 111 Va. 415, 69 S. E. 355.

Here it is distinctly stated that the plaintiff and the defendant were attempting to adjust their differences, plaintiff claiming she was entitled to $1,500, defendant in her representative capacity denying that claim, but during the course of the conversation once said that "as a compromise" she would give $1,000. There is no evidence that the statement "without prejudice" in express terms was used, but from the whole of the evidence quoted it is clear that the offer of $1,000 was made in an effort to avoid litigation. There is no independent or dependent admission of a fact. It is conceded by both parties that there was some amount due plaintiff, *i. e.,* from seventy-five to one hundred dollars.

The general rule is that on the ground of public

policy an offer to compromise or settle a disputed claim will not be received as an admission of the party making the offer (1 R. C. L. 471), but if during the negotiation there is an admission of an independent fact pertinent to the question in issue, such evidence is admissible. See *Enoch Erickson* v. *Webber* (S. D.) 237 N. W. 558, 80 A. L. R. 914 and note; 22 C. J. 314.

Applying these rules to the record as certified, there is no statement or admission of an independent fact which tends to show liability, other than an inference which might be deduced from the offer to "give" a certain sum. It was distinctly stated in the evidence quoted that defendant made the offer "as a compromise." From the whole setting, it appears that defendant was acting in her representative capacity and had no intention of acknowledging the validity of the debt, but desired to buy peace. We cannot say that the offer amounted to a tacit admission of liability or evinced a consciousness on the part of defendant of her liability. We think, therefore, that this evidence should have been excluded from the consideration of the jury.

Defendant also urged that the court erred in refusing to set aside the verdict because under Code section 6209 the verdict of the jury could not be based upon the uncorroborated evidence of plaintiff herself. The corroborating evidence in this case is strikingly similar to that in *Timberlake's Adm'r* v. *Pugh,* 158 Va. 397, 163 S. E. 402, in which Judge Holt reviewed the authorities on the subject, and the conclusion there reached is decisive of the point in this case.

Upon the whole case, we are of opinion that the judgment should be reversed, and the case remanded to the Circuit Court of Giles county for a new trial to be had in accordance with the views expressed herein.

*Reversed and remanded.*