## CIRCUIT COURT OF SHENANDOAH COUNTY

Lewis S. Croy

v.

Robert W. Poole et al.

October 2, 1984

Case No. (Chancery) 2459

By JUDGE PERRY W. SARVER

Set forth herein is the opinion of the Court after hearing evidence and after consideration of the pleadings filed herein.

Briefly, the evidence shows that Defendants Poole purchased a parcel of real estate in the Town of New Market, Shenandoah County, said real estate being conveyed to them by deed dated June 9, 1983, acknowledged June 10, 1983, (there being two acknowledgements, and the last acknowledgement was June 10, 1983) and was admitted to record on August 9, 1983, in Deed Book 457, page 289, of the Clerk's office of the Circuit Court of Shenandoah County.

Some time in early June, and perhaps even before Defendants Poole acquired title to said real estate, Mr. Poole met with Plaintiff Croy (herein referred to as Croy) and discussed contracting with Croy to excavate the said property, level it and install footers for the construction of a dwelling house. The testimony is uncontradicted that the parties visited the property and it appears that also from the evidence that the property was covered with a heavy undergrowth and it was impossible to determine the topography of the real estate at that time. Croy testified that he was aware in walking the property that it was not level and Mr. Steven Pizzo, who accompanied the par-

ties to the property, stated that the property was not level while Mr. Poole was of the opinion that the property was almost level. It appears from the testimony that the only level ground was at the top of a hill which was not involved in the construction process. There was also evidence that Mr. Poole was not sure as to exactly where he wanted to locate the house and, during the course of the excavation, the location was changed several times although this did not cause any substantial problems. Mr. Poole had looked at the lot only a few days before the purchase and then met with Croy a few days thereafter and had not made a thorough examination.

After the property was cleared, it was found that there was a grade of approximately 16° and this would result in substantial grading that was not contemplated by the parties, which required substantial blasting and excavation. During the course of the period of time in which the blasting was taking place, rock and dirt being removed, Croy testified that it was realized that, due to the large quantity of dirt and rock not contemplated by the parties, it would be necessary to remove the same from the premises and Croy states that this was also an extra to be paid for by Poole, which is denied by them.

Plaintiff completed the leveling of the area where the house was to be placed, installed the footers agreed upon, after the blasting and excavation took place, and hauled rock, materials and waste from the premises. On July 7, 1983, after the completion of the work, Croy billed Poole a total sum of $6,886.92 for this work less an advance of $1,500.00 paid by Poole to Croy for a net bill of $5,386.92. Said amount was not paid by Poole and Croy filed a Memorandum of Mechanic's Lien and when payment was not forthcoming instituted this Chancery action to enforce the Mechanic's Lien. Poole answered by filing a grounds of defense and among other things alleged that the agreement between Croy and Poole was a fixed price agreement in the sum of $1,400.00 and that said amount has been fully paid and that there is an accord and satisfaction. At the same time, Poole cross-claimed alleging that there was a fixed price contract between Croy and Poole to excavate the property and to dig footers for a residential dwelling at a price of $1,400.00 and

that Poole had paid $1,500.00 pursuant to said contract. Poole further alleged in his cross-claim that Croy did not perform the contract within a reasonable period of time, that such work was done incorrectly and as a direct and approximate result of Croy's failure to perform properly in accordance with the terms of the contract in a prompt, workmanlike way, Poole suffered damages in the sum of $8,000.00.

The Court finds from the evidence introduced at the trial that the agreement between the parties was that Croy was to excavate the site which would include removal of all undergrowth and install the necessary footers as shown on Poole's plans. The Court finds that Croy and Poole contemplated that there would be very little removal of soil and rock, and the parties were mutually mistaken in that regard as subsequent events showed, but in any event, any such rock removal and dirt removal was to be an extra and based upon the actual time and material involved and there was no mark up to be charged by Croy in this regard. The Court further finds that since the parties did not contemplate the extensive excavations that were required, they did not contract as to the cost of removing the dirt, rock, and undergrowth from the premises and this too was an extra.

The Court finds that Croy is entitled to recover the cost of all labor and materials connected with the blasting and removal of the dirt, rock and undergrowth from the premises. Plaintiff readily admitted that he was going to charge for the blasting on a straight time and materials basis and there was no mark up for profit and overhead. It is clear to the Court that the parties recognized that the $1,400.00 would not cover the complete job and that this would only cover a portion of the work to be performed by Croy. On June 21, 1983, some 12 days after Croy started his work, Poole made an advance of $1,500.00 to Croy which exceeded the amount of the contract by $100.00 (Plaintiff's Exhibit H, check signed by Mrs. Poole). There was a notation on the check that it was an "advance on excavation." Poole obviously knew that the $1,500.00 was only a part payment as evidenced by the memorandum, and that there would be additional work billed in connection with the completion of the job.

Defendant relies upon *Marine Dev. Corp.* v. *Rodak*, 225 Va. 137, 300 S.E.2d 763 (1983), and states that Croy should be allowed to recover the reasonable value of the services performed on a theory of *quantum meruit*. *Marine Dev.* reaffirms the theory of *quantum meruit* as followed in Virginia and as applied by the Supreme Court in *Hendrickson* v. *Meredith*, 161 Va. 193, 170 S.E. 602 (1933). In *Hendrickson* plaintiff was attempting to secure specific performance of an agreement with defendant's decedent. While the Supreme Court held that the agreement was unenforceable as being too vague and indefinite it further found that plaintiff had rendered valuable services and was entitled to reasonable compensation based upon the reasonable value of the services performed by her, less any compensation already received, whether in money or otherwise. Thus, though the contract between plaintiff and defendant's decedent was void, she was entitled to be compensated for services rendered pursuant to the contract; and so in the case at hand, while the parties may have been mistaken as to the extent of the services to be performed by Croy, because neither party realized how much grading and excavation would be required because of the condition of the premises when they viewed it, this cannot defeat Croy's right to recover. Croy has rendered services, furnished material and labor, and Poole (both husband and wife) have profited therefrom thus they must compensate Croy. As was stated in *Marine Dev.* at pages 140 and 141:

> It is a general rule of law that he who gains the labor . . . of another must make reasonable compensation for the same. Hence, when one furnishes labor to another under a contract which, for reasons not prejudicial to the former, is void and of no effect, he may recover the value of his services on a *quantum meruit.* (Citing *Hendrickson* v. *Meredith*, *id.*)
>
> . . . Where the parties contract for the doing of certain work, and the work is done and accepted, and it appears that there was a misunderstanding as to the price to be paid for it, the law rejects the understand-

ing of each, and awards reasonable compensation.

> However, after services . . . have been furnished and accepted, the fact that no price had been agreed on or that the compensation mentioned . . . is too indefinite *does not prevent the recovery of reasonable compensation. Id., 141.*

Thus, it appears that both parties were clearly mistaken as to the extent of the work to be performed and the contract could have been voided, based upon a mutual mistake of fact relating to the extent of the work required, however the parties elected to go ahead with the work. Croy, after seeing the extent of the work required and discussing the same with Poole on several occasions, decided to proceed with the work and Poole, after these discussions, elected to utilize Croy's services. The work was clearly much more extensive than originally contemplated by the parties, and thus other arrangements were necessarily made. (*See* 13A M.J., *Mistake and Accident,* page 158 et seq., and particularly Sections 3 and 4 discussing mistakes of fact and equitable relief. *See also* 17 Am. Jur. 2d, *Contracts,* § 344, page 782, where services performed under void contract may be subject to *quantum meruit.*)

The Court has reviewed the invoice of Croy, dated July 7, 1983, (Plaintiff's Exhibit E) and finds with certain minor exceptions, that the amount charged for the various services is reasonable when considered together with the evidence introduced at the trial. The Court does find that Croy charged more for the exploders and powder utilized by him than what Mr. Monger charges for exploders and powder. For example, Mr. Monger testified that he charged $2.00 for exploders while Croy billed $2.50 for this item and Mr. Monger testified that he charged $4.00 for 1 " x 16" powder while Croy billed $4.50, therefore, the amount of Croy's claim must be reduced by $145.00 to cover overcharge on the exploders and powder, according to the Court's calculations, since Croy testified that there was to be no mark up on materials.

No other evidence was introduced to controvert the amounts charged by Croy as the same pertains to the market value of these services, labor, rental

values of equipment and materials as charged in this area.

The only other question remaining is whether or not all of these services were necessary, and whether or not the services of Croy were performed in a workmanlike manner. In reviewing the testimony of all of the witnesses, including both Croy's and Poole's witnesses, the Court finds that the services were necessary. Considering whether or not the services and work were performed in a workmanlike manner, the Court considers the testimony of Carson Ryman, the building inspector for Shenandoah County; Richard Tucker; and Clarence Williams, the brick mason; all of whom were more or less disinterested parties, although Mr. Tucker was hired by Poole after Croy left the job so he was not totally disinterested.

Mr. Ryman testified that Croy's work was inspected by him and he found the footers to be of a proper width, depth, stepped as they were supposed to be and the excavation work was "very nice." On cross-examination, he testified that the footers were good, on solid ground, square and he further stated that he did not shoot grades. He also said that the footers would accommodate block up to 12 inches, and Croy had previously testified on rebuttal examination that he had been instructed by Poole that the footers were to be of a size sufficient to accommodate 12 inch block. Croy further testified that the plans did not specify the size of the footers.

Richard Tucker, who was employed by Defendants, testified that he was a building contractor and excavator and had been so for some eight years. He stated that he moved some dirt, leveled behind the house in order to provide space for the concrete truck to get behind the house, and moved other dirt further away from the house and leveled it in order to create a slope away from the house for drainage purposes. He stated that it was not necessary for him to do any blasting in connection with his work. He stated that he was paid a total of amount of $1,025.00. He further testified that the entire lot had been cleared but he was not sure as to what the status was concerning the footers when he did his work. He also stated that he did some fill work. Mr. Tucker did not furnish any breakdown as to the labor performed by him and he

further stated that a portion of his work included finished grading, and a value of this work could be as much as $300.00. There was no statement by Mr. Tucker that Croy's work was performed improperly or that the work that he performed in any way duplicated work charged for by Croy on his statement. Mr. Poole, testified that Mr. Tucker's work duplicated work that Croy was paid for but in reviewing my trial notes of Mr. Tucker's testimony, I find that Mr. Tucker's work was to a large extent different from that of Croy in that Croy had no responsibility for finished grading and a substantial portion of Mr. Tucker's work related to that.

In reviewing the testimony of Clarence Williams, it would appear that certain corrective work done by Mr. Williams would be the responsibility of Croy. Mr. Williams testified that in checking the grade level with a transit, he found that it was necessary to fill with gravel and concrete because some of the footers were too low. He stated that to correct this, it was necessary to purchase extra concrete at a cost of $50.00 and also extra gravel at a cost of $1,000.00. Accordingly, the amount due by Poole to Croy should be decreased by the sum of $1,050.00. Additionally, Mr. Williams testified that there was not enough clearance on either side of the house to get a truck through and it was necessary to clear out this area. However, no costs were given or time estimates given as to the amount of time required in this regard. Mr. Tucker stated that he did some of this work but sufficient evidence was not furnished in order for the Court to make a finding as to just what was required in the way of dollar amounts to take care of this work.

The Court considered all testimony concerning the Visa invoices covering gas purchases (Defendant's Exhibit 3), and after considering this evidence and including the quantities purchased and the manner in which purchased, these amounts are also to be deducted from the amount due Croy.

The Court considered the evidence pertaining to the installation of a retaining wall at the back of the property. The Court does not find that the footers for this retaining wall was contemplated as a part of the work to be performed and in fact the necessity of the retaining wall was something that did not arise

until later after Poole found that much more excavation was necessary. The Court cannot see any theory of law which would assess the cost of erecting this retaining wall to Croy.

In summary, Plaintiff shall have judgment against the Defendants Robert W. Poole and Linda L. Poole in the sum of $4,143.46, arrived at as follows:

| | |
|---|---|
| Total amount of Plaintiff's statement | $6,886.92 |

Less:

| | | |
|---|---|---|
| Amounts paid by Poole for gravel and concrete due to Croy's improper excavation (per testimony of Clarence Williams) | $1,050.00 | |
| Overcharge on powder and exploders (per testimony of M. L. Monger, Jr.) | 145.00 | |
| Purchase of gas not sufficiently explained | 48.46 | |
| Amount of check dated June 21, 1983, for "advance on excavation" | 1,500.00 | |
| | | 2,743.46 |
| Total Judgment | | $4,143.46 |

The Court finds that the Mechanic's Lien filed by Plaintiff and recorded in Deed Book 459, page 95, of the Clerk's office of this Court was properly filed and that the suit to enforce said Mechanic's Lien was timely brought, the Court noted also that these matters were admitted by Poole, and that the order of the priorities of the liens on the real estate described in Paragraph 2 of the Bill of Complaint, pursuant to Code Section 43-21 is as follows:

1. The Mechanics Lien which is the subject matter of these proceedings duly recorded on September 13, 1983, in Deed Book 459, page 95.

2. That Deed of Trust dated August 22, 1983,

recorded August 29, 1983, and recorded in Deed Book 458, page 239.

3. That Deed of Trust dated October 14, 1983, recorded October 18, 1983, and recorded in Deed Book 460, page 658.

4. That Deed of Trust dated March 6, 1983, recorded March 8, 1984, and recorded in Deed Book 467, page 46.

Counsel for Croy shall prepare a decree incorporating this opinion letter therein by reference thereto and providing for judgment in the foregoing amount and further providing that the real estate be sold to pay off and satisfy Croy's lien and that the balance due be distributed among the remaining liens in the priority set forth above. It may be that Counsel can agree that this order of sale is not necessary but if such be necessary, said decree shall provide for the appointment of R. Bruce Wiles, Esquire, as a Special Commissioner to effect the sale of the real estate.