Present: All the Justices

SPECTRA-4, LLP, ET AL.

v.   Record No. 140892

OPINION BY
JUSTICE LEROY F. MILLETTE, JR.
June 4, 2015

UNIWEST COMMERCIAL REALTY, INC.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

In this appeal we determine to what extent implied-in-fact contracts encompass the terms of previously expired express contracts that were not executed by the parties to the implied-in-fact contracts.

## I.   FACTS AND PROCEEDINGS

Spectra-4 LLP and Spectet Limited Partnership, LLP are limited liability partnerships that individually own and lease neighboring commercial buildings in Reston, Virginia.  This appeal arises out of a dispute over the management services provided for the commercial buildings.

1.   History Of Management Services

Relevant to this appeal, three separate entities have provided the management services for the commercial buildings.

First, Jefferson/LBG, L.L.C. managed the commercial buildings from 1995 to 1997.  Jefferson/LBG was organized in August 1995 and was owned in part by Suzanne O. Farr. Jefferson/LBG's management services were governed by two separate but materially identical Management Agreements, one

for each commercial building.  Spectra-4 and Jefferson/LBG executed the Management Agreement pertaining to the commercial building owned by Spectra-4, and Spectet and Jefferson/LBG executed the Management Agreement pertaining to the commercial building owned by Spectet.  The corporate existence of Jefferson/LBG was automatically cancelled by the Virginia State Corporation Commission in December 1997 when it failed to pay its annual registration fee.

Second, Jefferson Commercial Real Estate Services, Inc. managed the commercial buildings from 1998 to 1999.  Farr was also an owner of Jefferson Commercial, but despite their similar titles, Jefferson Commercial was a separate entity legally distinct from Jefferson/LBG.  No new Management Agreements were executed to govern Jefferson Commercial's management services for the commercial buildings.  Also, Jefferson Commercial did not transact any business with Jefferson/LBG.

Third, Uniwest Commercial Realty, Inc. managed the commercial buildings from 2000 until 2012.  No new Management Agreements were executed to govern Uniwest's management services for the commercial buildings.  Also, Uniwest did not transact any business with Jefferson/LBG.  However, Uniwest did transact business with Jefferson Commercial.  Uniwest and Jefferson Commercial executed an Asset Purchase Agreement in

2

November 1999 in which Jefferson Commercial sold all of its assets, but no stock, to Uniwest.

2.    Uniwest's Tenure In Providing Management Services

Jefferson Commercial notified Spectra-4 and Spectet that it added Uniwest "as partners" to its management services effective January 2000.  At that time, Farr became Uniwest's president.  Later, in 2002, Uniwest fired Farr from this position.  Despite this change, Uniwest continued to provide management services for the commercial buildings until 2012.

In September 2012, Spectra-4 and Spectet notified Uniwest that they sought to "terminate[] the [M]anagement [A]greement[s] between Uniwest and [Spectra-4 and Spectet]." Uniwest responded that the termination was "invalid per the terms of the [Management] Agreement[s]," and stated that it would continue its management services until certain specified dates.  Legal counsel then became involved, and after a series of letters sent back and forth, Uniwest's management services for both commercial buildings were terminated in October 2012. Following the termination of its management services, Uniwest withdrew $13,847.61 in premature termination fees from Spectra-4's operating accounts, and $22,605.72 in premature termination fees and $1,751.30 in copying costs from Spectet's operating accounts.

Uniwest withdrew these funds because it believed that it was entitled to such fees and costs upon what Uniwest considered to be Spectra-4's and Spectet's premature termination of Uniwest's management services. Uniwest's position was predicated upon its belief that the Management Agreements themselves dictated the contractual relationships between Spectra-4 and Uniwest, and between Spectet and Uniwest; or, alternatively, that the contractual relationships between the parties had incorporated the full terms of the Management Agreements. In contrast, Spectra-4 and Spectet believed that Uniwest's withdrawal of such fees and costs was impermissible. Spectra-4's and Spectet's position was predicated upon the belief that the Management Agreements did not govern Uniwest's management services; and that even if the Management Agreements did govern, Spectra-4 and Spectet had complied with the "just cause" termination clause of those agreements in terminating Uniwest's management services.

3. Judicial Proceedings

Upon learning that Uniwest had withdrawn additional fees and costs, Spectra-4 and Spectet filed separate Warrants in Debt against Uniwest in the General District Court of Fairfax County, alleging conversion. The cases were not consolidated, but a single trial was held and the district court awarded judgment in favor of Spectra-4 and Spectet.

4

Uniwest timely appealed to the Circuit Court of Fairfax County, and Spectra-4 and Spectet amended the complaints to include breach of contract claims. Once again, the cases were not consolidated but a single trial was held. After a bench trial the circuit court requested additional briefing on Uniwest's renewed motion to strike. Upon considering the parties' arguments and briefs, the circuit court entered judgment in favor of Uniwest and dismissed Spectra-4's and Spectet's claims with prejudice.

Spectra-4 and Spectet timely appealed to this Court.

## II. DISCUSSION

Although we granted three assignments of error, we need only address the first assignment because our determination of the terms of the implied-in-fact contracts governing the parties' relationships resolves this appeal.[1] Jimenez v. Corr, 288 Va. 395, 404, 764 S.E.2d 115, 118 (2014).

---

[1] Assignment of error 2 pertained to whether Spectra-4 and Spectet waived their right to terminate management services under the Management Agreements' "just cause" termination clause.

Assignment of error 3 pertained to whether Spectra-4 and Spectet could waive any portion of the Management Agreements by conduct, rather than by writing, despite the waiver-only-in-writing clause in the Management Agreements.

Assignment of error 1 reads:

1.   The trial court erred in holding that the implied-in-fact contracts between [Spectet and Spectra-4] and [Uniwest] "effectively incorporated the terms of the [Management Agreements]" and, thus, that [Uniwest] did not breach the implied-in-fact contracts by taking liquidated damages from [Spectet and Spectra-4] equal to six months' management fees and charging [Spectet] for copy costs.

A.   Standard Of Review

"The question of whether [a valid] contract exists is a pure question of law, to which we apply a de novo standard of review."  Mission Residential, LLC v. Triple Net Props., LLC, 275 Va. 157, 161, 654 S.E.2d 888, 890 (2008).  Similarly, we review de novo the purely legal issues of what the terms of a contract are, and how those terms apply to the facts of the case.  See Doctors Co. v. Women's Healthcare Assocs., 285 Va. 566, 571, 740 S.E.2d 523, 525 (2013).

B.   The Contractual Agreements Governing Uniwest's Management Services For The Commercial Buildings

Parties may agree to an express contract, whether orally or written, to govern their course of dealing.  See Virginia Iron, Coal & Coke Co. v. Odle, 128 Va. 280, 285, 105 S.E. 107, 108 (1920).  In the absence of an express contract, an implied contract may exist.  City of Norfolk v. Norfolk Cnty., 120 Va. 356, 363, 91 S.E. 820, 822 (1917).  Two types of implied contracts are recognized in Virginia:  implied-in-fact contracts and implied-in-law contracts.  Id.  Implied-in-fact

6

contracts are no different from express contracts except that, instead of "all of the terms and conditions [being] expressed between the parties, . . . some of the terms and conditions are implied in law from the conduct of the parties."  Hendrickson v. Meredith, 161 Va. 193, 200, 170 S.E. 602, 605 (1933). Implied-in-law contracts, or "quasi contracts," establish liability "from an implication of law that arises from the facts and circumstances, independent of agreement or presumed intention."  Id.  "In such cases, the promise is implied from the consideration received, [and] the legal duty imposed upon the defendant defines the contract."  Id.[2]

1.   Express Contracts

The circuit court concluded that the Management Agreements – the express contracts executed by Spectra-4 and Jefferson/LBG, and by Spectet and Jefferson/LBG – did not govern the relationship between Spectra-4 and Uniwest, and between Spectet and Uniwest.  On appeal, Uniwest argues that it succeeded to the Management Agreements, or that the Management Agreements were assigned to it, and thus the express contracts

---

[2] An implied-in-law contract governing the subject matter at hand does not exist between Spectra-4 and Uniwest, and between Spectet and Uniwest, because as set forth below implied-in-fact contracts exist between these sets of parties. City of Norfolk, 120 Va. at 374, 91 S.E. at 825 ("The fiction of an [implied-in-law contract] will not be indulged in every case, but only where, in equity and good conscience, the duty to make such a promise exists.").

set forth in the Management Agreements directly governed Uniwest's management services.  We disagree.

The circuit court concluded that the Management Agreements were cancelled when the State Corporation Commission automatically cancelled the corporate existence of Jefferson/LBG.  See Moore v. Crutchfield, 136 Va. 20, 25, 116 S.E. 482, 483 (1923); Lucas v. Pittsburgh Life & Trust Co., 137 Va. 255, 271, 119 S.E. 109, 114 (1923); see also Martin v. Star Publishing Co., 126 A.2d 238, 243 (Del. 1956); Solomon v. Greenblatt, 812 S.W.2d 7, 17 (Tex. Ct. App. 1991); Wyoming-Indiana Oil & Gas Co. v. Weston, 7 P.2d 206, 209-10 (Wyo. 1932).  We need not decide whether that holding was correct because, regardless of the status of the rights and obligations under the Management Agreements as entered into by Spectra-4, Spectet, and Jefferson/LBG, those rights and obligations were never extended to either Jefferson Commercial or Uniwest.

Neither Jefferson Commercial nor Uniwest succeeded to or were assigned any rights and obligations created under the Management Agreements.  See Layne v. Henderson, 232 Va. 332, 338, 351 S.E.2d 18, 22 (1986) (providing the plain meaning of "successor" in a contract); J. Maury Dove Co. v. New River Coal Co., 150 Va. 796, 827, 143 S.E. 317, 327 (1928) (setting forth the general rule of how a contractual obligation may be assigned).  Jefferson Commercial and Uniwest were not parties

8

to the Management Agreements, are entities legally distinct from Jefferson/LBG, did not merge with Jefferson/LBG, acquired no stock and no assets from Jefferson/LBG, and entered into no contracts with Jefferson/LBG. Simply put, Jefferson Commercial and Uniwest were strangers to the Management Agreements when those express contracts were executed, and remained strangers to the Management Agreements even as Jefferson Commercial and Uniwest provided management services for the commercial buildings. And although an asset purchase agreement was executed between Jefferson Commercial and Uniwest, Jefferson Commercial could not sell the Management Agreements to Uniwest because Jefferson Commercial never acquired an interest in those express contracts.[3]

---

[3] These facts also establish why, contrary to Uniwest's arguments to the circuit court, this appeal does not implicate ratification or acceptance by performance.

"Ratification is an adoption of a contract made on [a party's] behalf by [a third person] whom [the party] did not authorize, which relates back to the execution of the contract and renders it obligatory from the outset." Reid v. Field, 83 Va. 26, 33, 1 S.E. 395, 399-400 (1887). Jefferson/LBG did not execute the Management Agreements on Uniwest's behalf. Uniwest could not ratify contracts not entered into on its behalf.

The doctrine of acceptance by performance stands for the proposition that "[t]he absence of an authorized signature does not defeat the existence of the contract" if a party's conduct denotes acceptance of an offer. Galloway Corp. v. S.B. Ballard Constr. Co., 250 Va. 493, 505, 464 S.E.2d 349, 356 (1995). As related to the Management Agreements, Spectra-4's and Spectet's offers were directed to Jefferson/LBG. Uniwest could not accept – by writing or performance – an offer never made to it.

Thus, the Management Agreements were express contracts that governed only the relationship between Spectra-4 and Jefferson/LBG, and between Spectet and Jefferson/LBG. The circuit court did not err in holding that the Management Agreements did not directly govern Uniwest's management services.

2.  Implied-In-Fact Contracts

In the absence of an express contract between the parties governing a particular subject matter, an implied contract may exist. County of Campbell v. Howard, 133 Va. 19, 54-55, 112 S.E. 876, 886 (1922); Ellis & Myers Lumber Co. v. Hubbard, 123 Va. 481, 502, 96 S.E. 754, 760 (1918). Like an express contract, an implied-in-fact contract is created only when the typical requirements to form a contract are present, such as consideration and mutuality of assent. City of Norfolk, 120 Va. at 361-62, 91 S.E. at 821-22. However, an implied-in-fact contract "is arrived at by a consideration of [the parties'] acts and conduct." Id. at 362, 91 S.E. at 821.

a.  Existence Of The Implied-In-Fact Contracts

The circuit court concluded that, between Spectra-4 and Uniwest, and between Spectet and Uniwest, implied-in-fact contracts governed Uniwest's management services for each commercial building. This was not error.

10

The record reflects that, even though no oral or written agreement was executed between the parties, Uniwest provided Spectra-4 and Spectet management services for approximately twelve years. For each commercial building, Uniwest provided a building manager, collected rent from tenants, addressed problems raised by tenants, oversaw building maintenance and engineering, and maintained an operating account from which it withdrew operating costs and paid itself a monthly fee for its services. These actions establish that an implied-in-fact contract existed between Spectra-4 and Uniwest, and between Spectet and Uniwest, and that those implied-in-fact contracts governed Uniwest's management services.

b.    Terms Of The Implied-In-Fact Contracts

The circuit court concluded that these implied-in-fact contracts "effectively incorporated" the previously expired, expressly created Management Agreements in their entirety for purposes of the implied-in-fact contracts' terms and conditions. This was error.

The threshold error in the circuit court's reasoning was the court's determination that mutuality of assent existed in light of its factual finding that Spectra-4, Spectet, and Uniwest held the "subjective belief" that they were operating under the entirety of the Management Agreements. A meeting of the minds cannot exist simply because the parties independently

11

believe the exact same thing. Instead, mutuality of assent exists by an interaction between the parties, in the form of offer and acceptance, manifesting "by word, act[,] or conduct which evince the intention of the parties to contract." Green v. Smith, 146 Va. 442, 452, 131 S.E. 846, 848 (1926). In other words, the parties' belief of what the agreement is must coincide with written or spoken words, if an express contract is to be formed; or must coincide with the parties' conduct, if an implied-in-fact contract is to be formed. Id.; see also Joseph M. Perillo, 1 Corbin on Contracts § 1.19, at 55-58 (rev. ed. 1993) (making the point that the only difference between an express and implied-in-fact contract is the manner in which mutuality of assent is established).

Accepting that belief must exist in tandem with words or actions is only a starting point. With implied-in-fact contracts, the parties' conduct must also establish what the terms of the contract are. See Hendrickson, 161 Va. at 200, 170 S.E. at 605; City of Norfolk, 120 Va. at 361-62, 91 S.E. at 821-22. In limited circumstances, an implied-in-fact contract may encompass the totality of an express contract simply by way of the parties acting in a manner consistent with such an express contract. But it is only when the parties to an express contract continue to act as if that contract is still operative even after it expires that the entirety of "the

12

material terms of the prior contract . . . survive intact" by way of a subsequently formed implied-in-fact contract. Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery & Tobacco Workers Int'l Union, 28 F.3d 347, 355-56 (3d Cir. 1994).

Importantly, the logic recognized in Luden's Inc. applies only to those specific circumstances: when the same parties are engaged in the same course of dealing both during and after the expiration of the express contract. Absent such circumstances, an implied-in-fact contract may include only the particular terms of a previously expired express contract which the parties' subsequent actions, embodying their mutuality of assent, specifically encompass. See Green, 146 Va. at 452, 131 S.E. at 848; City of Norfolk, 120 Va. at 361-62, 91 S.E. at 821-22.

The logic of Luden's Inc. does not apply to the factual circumstances of this case. The previously expired express contracts in the form of the Management Agreements were between Spectra-4, Spectet, and Jefferson/LBG. The implied-in-fact contracts were between Spectra-4, Spectet, and Uniwest. Jefferson/LBG and Uniwest are legally distinct parties. Consequently, Spectra-4, Spectet, and Uniwest could not simply act consistent with the Management Agreements in order for their implied-in-fact contracts to include the full terms of

the Management Agreements. The implied-in-fact contracts included only the specific terms of the Management Agreements encompassed by the parties' conduct.

Thus, on the present record no basis existed for the circuit court to hold that the implied-in-fact contracts permitted Uniwest to withdraw $13,847.61 in premature termination fees from Spectra-4's operating accounts, and $22,605.72 in premature termination fees and $1,751.30 in copying costs from Spectet's operating accounts. The record demonstrates that the implied-in-fact contracts incorporated only some provisions of the Management Agreements. For example, evidence at trial established that Spectra-4 and Spectet not only permitted Uniwest to calculate their management fees in a manner consistent with the Management Agreements, but that the parties specifically referenced and relied upon Article 17.3 of the Management Agreements in order to recalculate Uniwest's management fees. Thus, the implied-in-fact contracts encompassed, among other terms, the terms and conditions of the Management Agreements relating to the calculation of the management fees.

However, no evidence established that Spectra-4, Spectet, and Uniwest engaged in conduct supporting the conclusion that the implied-in-fact contracts encompassed those terms and conditions of the Management Agreements governing premature

14

termination fees.  The Management Agreements' liquidation clause was the only basis for Uniwest withdrawing premature termination fees from Spectra-4's and Spectet's operating accounts.  At most, evidence showed that Uniwest actually withdrew premature termination fees upon the termination of Uniwest's management services.  But as the circuit court recognized, "the parties only terminated [the implied-in-fact contracts] once.  And there[ is] no pattern of conduct of termination."  Further, Spectra-4 and Spectet did not acquiesce to Uniwest's withdrawal of funds, but consistently disputed it.  Thus, on this record no conduct established a mutuality of assent that the implied-in-fact contracts encompassed the Management Agreements' liquidation clause.  Accordingly, Uniwest's withdrawal of $13,847.61 was not authorized by the implied-in-fact contract between Spectra-4 and Uniwest, and Uniwest's withdrawal of $22,605.72 was not authorized by the implied-in-fact contract between Spectet and Uniwest.

Additionally, no evidence established that Spectra-4, Spectet, and Uniwest engaged in conduct so that the implied-in-fact contracts encompassed terms and conditions permitting Uniwest to charge for copying costs.  Uniwest's Chief Financial Officer testified at trial that it withdrew $1,751.30 in copying costs from Spectet's operating accounts not based on the Management Agreements, but based only on "standard

15

procedure."  Also, the Management Agreements themselves permitted the "Agent" to "pay or reimburse itself for all expenses and costs of operating the Project."  However, Uniwest's Chief Financial Officer further testified that, while Uniwest would occasionally bill for "FedEx charges or something like that," she could not recall Uniwest ever charging Spectra-4 or Spectet for copying costs.  No other evidence was introduced pertaining to Uniwest's history of charging for copying costs.  Thus, on this record no conduct established a mutuality of assent that the implied-in-fact contracts encompassed a term allowing Uniwest to charge copying costs.  Accordingly, Uniwest's withdrawal of $1,751.30 was not authorized by the implied-in-fact contract between Spectet and Uniwest.

### III. CONCLUSION

Uniwest provided management services for the commercial buildings owned by Spectra-4 and Spectet.  As between Uniwest and Spectra-4, and between Uniwest and Spectet, two separate implied-in-fact contracts existed.  These implied-in-fact contracts could, and did, encompass specific portions of previously expired express contracts executed by a different set of parties.  However, these implied-in-fact contracts did not include terms and conditions permitting Uniwest to withdraw

16

premature termination fees or copying charges from Spectra-4's and Spectet's operating accounts.

We therefore reverse the circuit court's judgment that the implied-in-fact contracts permitted Uniwest's withdrawal of premature termination fees and copying charges from Spectra-4's and Spectet's operating accounts. We vacate the circuit court's order dismissing Spectra-4's and Spectet's claims with prejudice and entering judgment in favor of Uniwest. As Spectra-4 and Spectet have requested remand so that the circuit court may enter appropriate judgments, we remand this appeal to the circuit court for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>